Scileppi, J.
At approximately 5 -.30 p.m. on July 24, 1963, the defendant, while walking across the Clarissa Street Bridge in the City of Rochester, either dropped or threw his two-year-old son into the Genesee River. The child was rescued and suffered no serious injuries.
*327 The defendant was arrested near the scene of the incident and immediately confessed that he had thrown his son into the river. The defendant was .placed in a police car and brought to the Detective Division of Police Headquarters where he was questioned by the police. At approximately 6:30 p.m., one of the interrogating officers began typing a statement which was signed by the defendant at approximately 6:45 p.m.
In the meantime Herbert Stern, an attorney,- was at home watching the 6:00 p.m. news on television. The first item in the newscast dealt with the incident at the Clarissa Street Bridge and the arrest of the defendant. Mr. Stern, who had known the defendant for a period of two years and who had acted as his personal attorney in several matters, including an accident case which was pending in July of 1963, became concerned and decided to go to police headquarters ‘ ‘ to see what had happened”. He left his home at about 6:05 p.m. and arrived at Police Headquarters at 15 or 20 minutes after six. Mr. Stern approached Deputy Chief Jensen who seemed to be in charge of the investigation. He identified himself as an attorney representing the defendant and asked to see him. Officer Jensen replied that he was not sure if Stern could see the defendant, but he would find out and let him know. Jensen left the room and returned a few minutes later. He told Stern that the police were finishing up with their questioning and, if he waited a few minutes, he could see the defendant.
After the police completed questioning the defendant, Stern was admitted to the interrogation room where he spoke to the defendant. Stern testified that the defendant appeared to be intoxicated and that he was unable to coherently answer his questions except to say that “ the boy was in the river ”. After speaking to the defendant for 10 or 11 minutes, Mr. Stern left the interrogation room and told Officer Jensen, “ I think this fellow is pretty sick and I think you should leave him alone. There is no sense in talking to him anymore ”. Mr. Stern testified that he had not been asked by anyone to go to Police Headquarters and that he went there on his own because he felt he had an obligation to the defendant.
On the following morning, the defendant was questioned, in the absence of an attorney, by Detective Pantigrossi. The defendant made incriminating statements.
*328 The defendant was tried on an indictment charging him with attempted murder in the first degree. The defendant’s written confession was admitted against him over trial counsel’s objection. In addition, Detective Fantigrossi testified to the incriminating statements made by the defendant on the morning following his arrest. This testimony was not objected to. At the close of the trial, the defendant was found guilty of attempted murder in the second degree.
The Appellate Division unanimously affirmed without opinion. Belying on People v. Donovan (13 N Y 2d 148), People v. Failla (14 N Y 2d 178) and People v. Gunner (15 N Y 2d 226), the defendant argues that the written confession is inadmissible because all or part of it was obtained after his attorney had requested to see him. He also contends that the oral admissions made to Detective Fantigrossi are inadmissible because they were obtained in the absence of counsel after his attorney had been granted access to him.
In response to the defendant’s contentions, the People argue that the cases relied on by the defendant are inapposite since there is no evidence that Mr. Stern was retained by the defendant or by anyone on his behalf before he arrived at Police Headquarters, and since Mr. Stern took no positive action to protect the defendant’s rights once he arrived on the scene.
While it is true that the defendants in Donovan, Gunner and Failla were represented by retained counsel, the holdings in these cases were not dependent upon that factor. Indeed, in enunciating the fundamental right of the accused to be represented by counsel, we 'painted with broad strokes. Thus, in People v. Donovan, Judge Fuld, speaking for the court, stated at page 151: “ [W]e are of the opinion that, quite apart from the Due Process Clause of the Fourteenth Amendment, this State’s constitutional and statutory provisions pertaining to the privilege against self incrimination and the right to counsel * * *, not to mention our own guarantee of due process * * *, require the exclusion of a confession taken from a defendant, during a period of detention, after his attorney had requested and been denied access to him ” (accord People v. Failla, 14 N Y 2d 178, 180).
Similarly, in People v. Gunner (supra) it was argued that Donovan and Failla were not applicable because Gunner’s attor *329 ney had not physically appeared at the police station and asked to see his client as had Donovan’s and Failla’s attorneys. The court rejected this contention holding (p. 232) that a defendant’s right to counsel is not dependent upon “mechanical” and “ arbitrary ” requirements. Thus, the principle which may be derived from these pre-Miranda (Miranda v. Arizona, 384 U. S. 436) cases is that, once the police know or have been apprised of the fact that the defendant is represented by counsel or that an attorney has communicated with the police for the purpose of representing the defendant, the accused’s right to counsel attaches; and this right is not dependent upon the existence of a formal retainer.
Nor is it significant that Mr. Stern did not, immediately upon his arrival at Police Headquarters, instruct the police not to take any statements from the defendant (compare People v. Friedlander, 16 N Y 2d 248, People v. Sanchez, 15 N Y 2d 387, People v. Failla, supra, and People v. Donovan, supra, with People v. Gunner, supra). Once an attorney enters the proceeding, the police may not question the defendant in the absence of counsel unless there is an affirmative waiver, in the presence of the attorney, of the defendant’s right to counsel (People v. Vella, 21 N Y 2d 249). There is no requirement that the attorney or the defendant request the police to respect this right of the defendant.
Trial counsel did not object to the introduction of Detective Fantigrossi’s testimony and be objected to the admission of the written confession only on the ground that it was involuntary and not on the ground that it was obtained in the absence of counsel. The failure to object to the admissions on right to counsel grounds is not fatal since we are concerned with the deprivation of a fundamental constitutional right (People v. McLucas, 15 N Y 2d 167). People v. DeRenzzio (19 N Y 2d 45) is not in point. In that case, we refused to apply the M^ucas principle since DeBenzzio’s trial counsel not only failed to object to the introduction of postindictment statements but be strategically used them in the defense of his client. Moreover, we were unwilling to apply the rule of People v. Di Biasi (7 N Y 2d 544) retroactively to a trial which had been conducted more than 20 years before Di Biasi was decided. Neither of these factors exist in the case at bar.
*330 To conclude, under the prior decisions of this court, the written confession and the oral admissions made to Detective Fantigrossi were obtained in violation of the defendant’s right to counsel. Consequently, they were inadmissible.
Accordingly, the judgment appealed from should be reversed and a new trial ordered.
Chief Judge Fuld and Judges Burke, Bergan, Keating and Breitel concur with Judge Scileppi; Judge Jasen concurs in result.
Judgment reversed, etc.