OPINION OF THE COURT
Wachtler, J.
A Suffolk County jury found the defendant guilty of criminally negligent homicide. The Appellate Division reversed and dismissed the indictment holding that the defendant’s confession should be suppressed because the police questioned him in custody, in the absence of counsel, after an attorney retained to represent him had repeatedly called the police department central switchboard, identified himself, asked to speak with the defendant and requested that the defendant not be questioned until he arrived. Concededly these calls were not put through to the defendant, the interrogating officers or their supervisors. Instead the attorney was erroneously informed that the police did not "have” the defendant. On this appeal by the People the only question raised is whether, under the circumstances, the attorney’s repeated calls to the police department central switchboard were sufficient to put the police on notice that an attorney had entered the proceedings to represent the defendant on the criminal charges under investigation.
*461 At the .pretrial suppression hearing Detective Franco, from the Suffolk County Police Department’s Third Precinct located at Bay Shore, testified that he was summoned to Southside Hospital in Bay Shore on the evening of July 17, 1973. At the hospital he was informed by doctors in the emergency room that defendant’s stepson had been admitted with serious, and possibly fatal, injuries to the abdomen which could have been inflicted by blows to the stomach. The officer then returned to the waiting room and questioned the defendant and his wife. Neither however was able to explain how the boy received the injuries although the defendant, after being advised of his rights, admitted that on occasion he had hit the boy to discipline him. The officer later returned to the police station and filed a report to that effect.
The following morning at approximately 10:30 another officer from the third precinct, Detective Wyckoff, was sent to the hospital to question the boy. At the hospital however he was informed that the boy had undergone surgery, was still unconscious and was not expected to live. Detective Wyckoff then called his superior who directed him to bring the defendant down to the third precinct for questioning.
At the station house Wyckoff advised the defendant of his rights and questioned him, but the defendant continued to deny any knowledge as to how the boy had been injured. At approximately 12:20 that afternoon the boy died at the hospital. When Wyckoff was informed of this he stopped questioning the defendant because, as he stated, the matter was now within the jurisdiction of the homicide squad. The defendant remained at the third precinct until he was picked up by members of the homicide squad sometime after 1 o’clock that afternoon.
Shortly before 1 o’clock Leo Otis, an attorney retained by the defendant’s family to represent him in the investigation, made three phone calls to the Suffolk County Police Headquarters which is located at Hauppauge. During these conversations Otis identified himself as defendant’s attorney, asked to speak with him and requested that the defendant not be questioned until his attorney arrived. The calls were made to the central number for the police department where all incoming calls, except emergencies, are received at a central switchboard operated by three civilian employees who are responsible for directing the calls to the proper party. If the operators are in doubt as to where a call should go they can— *462 and apparently have been instructed to — refer the call to their supervisor who is the duty officer in charge of the communications center. However none of the calls made by the defendant’s attorney were put through to the defendant, the interrogating officers or their superiors — nor apparently were they referred to the duty officer.[1] Instead the defendant’s attorney was repeatedly misinformed that the police department did not "have” the defendant.
Within a half hour of Mr. Otis’ third call to police headquarters, detectives from the homicide squad transported the defendant from Bay Shore to Hauppauge where the homicide squad offices are located. Once again the defendant was advised of his rights and, after some questioning, finally admitted that he struck his stepson several times with his fists on the evening of July 17, 1973. However when the police began to reduce the statement to writing, the defendant stated that he would not sign anything and would not answer any further questions. Thus the questioning ceased sometime prior to 2:30 p.m. By 3 o’clock the police informed the defendant that he would be charged with homicide.
Approximately an hour later one of the detectives who had obtained the confession from the defendant received a phone call from the defendant’s attorney.[2] The officer assured Mr. Otis that the defendant had not signed anything; that he had not given any statements and that there would be no further questioning.
At the conclusion of the hearing the court denied the defendant’s motion to suppress. The court held that "assertion” of the right to counsel "must be made to a responsible member of the police department either by the defendant or his attorney.” And here, it was noted, the "evidence fails to *463 establish that the attorney spoke with anyone other than the civilian switchboard operators” (82 Misc 2d 436, 440-441; emphasis in original).
The Appellate Division reversed on the law.[3] The majority attached no significance to the fact that the attorney had spoken only to civilian switchboard operators. They simply noted that he had "made three calls to the Suffolk County Police Department” and that he "identified himself, requested to speak with defendant and asked that defendant not speak with anyone there until he arrived. He was repeatedly informed that defendant was not there”. Relying on People v Donovan (13 NY2d 148) and People v Arthur (22 NY2d 325) the Appellate Division held the confession must be suppressed (52 AD2d 638).
Subsequent to the Appellate Division determination, the rule announced in Donovan and Arthur was reaffirmed and restated as follows: "Once a lawyer has entered a criminal proceeding representing a defendant in connection with criminal charges under investigation, the defendant in custody may not waive his right to counsel in the absence of the lawyer” (People v Hobson, 39 NY2d 479, 481). The People recognize that this rule applies on this appeal (see, e.g., People v Macedonio, 42 NY2d 944; People v Singer, 44 NY2d 241), but urge that we hold, as the hearing court did, that the right does not apply until the defendant’s attorney has located and informed a "responsible police official.”
In People v Arthur (22 NY2d 325, 329, supra) we held that the right attaches "once the police know or have been apprised of the fact that the defendant is represented by counsel or that an attorney has communicated with the police for the purpose of representing the defendant”. This does not mean, of course, that the attorney must personally appear at the station house (see, e.g., People v Gunner, 15 NY2d 226, 230), or even that he must communicate with the officers who are actually interrogating the defendant. For instance, we have considered the police to be apprised of the attorney’s entry into the proceeding when he communicated with the officer who seemed to be in charge of the investigation (see, e.g., People v Arthur, supra, at p 327), or with the chief of police (see, e.g., People v Gunner, supra). The People concede *464 as much but urge that the cases stand for the proposition that notice of the attorney’s entry into the proceeding must, at least, be made to a police officer responsible for the investigation. Actually the guiding principle in these, and other cases involving the right to counsel is that the defendant’s right should not be "dependent upon 'mechanical’ and 'arbitrary’ requirements” (People v Arthur, supra, at p 329; People v Gunner, supra, at p 232; see, also, People v Ramos, 40 NY2d 610; People v Hobson, supra, at p 483; People v Singer, supra). What is required must always be considered in light of what is practical under the circumstances (see, e.g., People v Gunner, supra, at p 232).
As this case illustrates, the right to counsel is of little value if the attorney cannot communicate with the defendant or with the officials holding him in custody or can only reach them after extended delay when the investigation is, in effect, completed. The police, of course, must recognize this and must also realize that even though the defendant may not have retained counsel prior to being taken into custody, an attorney, later retained by friends or family or otherwise representing him (see, e.g., People v Arthur, supra, at pp 328-329), may wish to consult with him while he is being questioned by the police. And when an attorney does not know where the defendant is being held, there is little doubt that the police are better equipped than he is for locating the defendant or the officers immediately or ultimately responsible for the investigation. Indeed if the police have a person in custody they should be charged with knowledge of his whereabouts.
In sum, once a person has been taken into custody, the burden is on the police to keep track of him and to establish and maintain procedures which will insure that an attorney representing him may communicate with him and with the officials responsible for the investigation, without unreasonable delay. Thus, in this case, when the defendant’s attorney called the general information number at police department headquarters, identified himself and asked to speak with the defendant and further requested that there be no questioning, the police should have been on notice that an attorney had appeared on behalf of the defendant then in custody. If the particular department intends this type of information to be forwarded to other officers, it must direct the call to the proper party. It would indeed be impractical, arbitrary and unfair to hold defense counsel responsible because police *465 department employees unintentionally misinformed him (see, e.g., People v Hobson, 39 NY2d 479, supra, overruling People v Robles, 27 NY2d 155), or failed to follow procedures established by the department. In related contexts it has been held that confusion or lack of communication within the law enforcement agencies cannot impair the defendant’s rights (People v McLaurin, 38 NY2d 123; Santobello v New York, 404 US 257, 259, 269). That principle should equally apply to the critical right to counsel.
The order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Fuchsberg and Cooke concur.
Order affirmed.

. At the hearing the duty officer testified that he could not recall receiving any calls from an attorney on that date, nor could he find any record of such a call in his log. The civilian operators were not called at the hearing. And, although the police department tape-records incoming calls, the tapes for 1973 had been routinely destroyed sometime prior to the hearing. The defendant’s attorney, however, produced telephone company records which showed that he did in fact make three calls from his office to the central number for the Suffolk County Police Department prior to 1 o’clock on July 18, 1973. These records show that the first call was made at 12:47 p.m. and lasted five minutes. The other two calls were made at 12:53 p.m. and 12:54 p.m.

. It is not entirely clear how Mr. Otis finally located the defendant. It appears however that members of the defendant’s family who had followed the defendant from the third precinct to Hauppauge were able to inform Mr. Otis that the defendant was being held for questioning by the homicide squad.

. The order originally stated that the reversal was on "the law and the facts”. But on application of the People the order was later amended to indicate that the reversal was on the law alone (see CPL 450.90, subd 2).