STATE OF NORTH CAROLINA v. CHARLES ELVIE ROMERO

No. 818SC632

(Filed 16 February 1982)

**1. Criminal Law § 75— admissibility of confession—standard of proof**

The State need not prove beyond a reasonable doubt that an incriminating in-custody statement was made freely and voluntarily by defendant in order for the statement to be admissible in evidence.

**2. Criminal Law § 75.4— counsel in other cases—in-custody statements in absence of counsel—waiver of counsel**

Defendant's due process rights were not violated because an officer interrogated him about a burglary charge in Greene County without the presence of an attorney who was representing him on breaking and entering charges in

Johnston County since (1) there was no indication that defendant's counsel in Johnston County also represented defendant in the Greene County case, and (2) even had the attorney entered the Greene County case on defendant's behalf, defendant effectively waived his right to counsel before discussing the Greene County burglary with the officer.

**3. Criminal Law § 34.4.— other crimes by defendant—competency to show relationship with accomplice**

Cross-examination of defendant regarding whether his alleged accomplice in the crimes charged had pled guilty in a case in another county in which defendant was convicted on two charges of breaking and entering was competent to show the relationship between defendant and the alleged accomplice in light of the significant role played by the accomplice in a conversation leading to a statement made by defendant in the presence of the accomplice and a deputy sheriff.

**4. Criminal Law § 33.2— evidence of motive—price of drugs and source of money**

Cross-examination of defendant regarding the price of drugs and source of money he used to buy them was competent to show defendant's motive in committing burglary and larceny.

**5. Criminal Law § 85.2— improper impeachment of defendant's character—curative instructions**

Although testimony by two State's witnesses concerning defendant's prior arrests may have tended to impeach his character and credibility before defendant put his character in issue, any prejudice was cured when the trial judge sustained objections to the testimony and instructed the jury not to consider the testimony elicited.

APPEAL by defendant from *Allsbrook, Judge.* Judgment entered 19 February 1981 in Superior Court, GREENE County. Heard in the Court of Appeals 18 November 1981.

Defendant was indicted for burglary in the second degree, larceny after breaking and entering, and receiving and possession of stolen goods.

The evidence tended to show that Mary Shackleford's home at Walstonburg in Greene County was broken into on 29 January 1980, and that several items, including a television set, rifle, cedar chest, telephone, silver cream pitcher and some jewelry were stolen. The state's case against defendant rested on three inculpatory statements made by defendant to authorities.

Ben Edmondson of the Greene County Sheriff's Department testified on voir dire that he took a statement from defendant in October of 1980 in which defendant admitted participating in the January breakin. He testified that he spoke to defendant some-

time after the first of October and advised defendant of his rights before taking the confession. Edmondson did not reduce the statement to writing until the day of trial. Defendant on voir dire testified that he was not guilty, but that he gave a false confession in reliance on Edmondson's promise that he would be sentenced to no more than five years confinement if he pled guilty. He also said that he confessed to the breakin because he faced charges in Johnston County on which he knew he would be incarcerated, and he wanted to take the blame for another man charged in the Greene County burglary, Ritchie Creech, because he thought the five-year sentence would run concurrently with the time he would have to serve on his sentence stemming from the Johnston County crime. Defendant was represented by counsel in Johnston County at the time, but he was not appointed counsel in Greene County until 24 October. Defendant testified that Creech told him that Creech's father would furnish defendant's bond if defendant would shoulder the blame. Defendant also said that he was "not in his right mind" when he gave the statement to Edmondson, because he had been taking drugs before being confined.

The evidence shows that defendant also confessed to Pitt County Deputy Lee Pascasio on 20 October 1980. Defendant was being held in Greene County for the Shackleford breakin. He had been arrested on 17 October for breaking into a house in Pitt County and had been taken to the Pitt County jail. After arriving in Pitt County on the 17th, defendant was read *Miranda* warnings in relation to the Pitt County breakin, and the defendant at that time indicated that he did not want to make a statement. On 20 October, defendant, accompanied by Creech and Creech's father, approached Deputy Pascasio on the day of defendant's first appearance in Pitt County District Court and asked to speak with the deputy. All four men went to the sheriff's office where defendant told Pascasio that he and a man named Phillip Carraway perpetrated the crimes in Pitt and Greene Counties and that Creech was not involved. Pascasio did not read defendant his *Miranda* rights on 20 October.

Johnston County Deputy Sheriff Richard G. Story testified on voir dire that he transported defendant and Phillip Carraway on 27 January 1981 from Pitt County jail to Johnston County, where defendant was to appear as a witness for the State in a

criminal trial. During the trip, Carraway stated that Creech was involved in the Greene County breakin, but defendant corrected Carraway and said that it was just he and Carraway who committed the crime.

The trial court found that all three of the statements were made freely and voluntarily and were, therefore, admissible into evidence. Defendant was convicted of burglary in the second degree. Defendant appeals from an order of imprisonment.

*Attorney General Edmisten, by Special Deputy Attorney General John R. B. Matthis and Associate Attorney John F. Maddrey, for the state.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Marc D. Towler, for defendant appellant.*

MORRIS, Chief Judge.

[1] Defendant challenged the admissibility of all three incriminating statements made by him. The trial court conducted voir dire hearings to determine their admissibility and allowed them into evidence. Defendant urges us on appeal to require that the state prove beyond a reasonable doubt that an inculpatory statement made by a defendant and introduced as evidence was given freely and voluntarily. His argument is made without authority from this state, however. Indeed, to accede to defendant's request would result in the imposition of a significant procedural innovation on our trial judges' treatment of confessions and other incriminatory statements.

The well-settled rule in North Carolina is, simply, that "(a) trial judges' finding that an accused freely and voluntarily made an inculpatory statement will not be disturbed on appeal when the finding is supported by competent evidence even when there is conflicting evidence." *State v. Harris,* 290 N.C. 681, 693, 228 S.E. 2d 437, 444 (1976); *State v. White,* 298 N.C. 431, 259 S.E. 2d 281 (1979). It appears, based upon the record, that the testimony supporting the voluntariness of defendant's various statements was carefully weighed by the trial judge. After the evidence is admitted, the circumstances under which statements attributed to a defendant were made may be elicited on cross-examination in the presence of the jury. Then "it is for the jury to determine whether the statements referred to in the testimony of the

witness were in fact made by the defendant and the weight, if any, to be given such statements. . . ." *State v. Walker*, 266 N.C. 269, 273, 145 S.E. 2d 833, 836 (1966). We hold that the evidence presented at the voir dire hearings fully supports the court's rulings that the statements in question were freely and voluntarily made, that defendant's rights were adequately protected, and that the imposition of the standard of proof advanced by defendant, though utilized in some states, is not required by North Carolina law.

[2] Defendant next assigns error to the trial judge's admission of the three statements into evidence on the ground that the first of those statements resulted from a custodial interrogation of the defendant during which defendant's attorney was not present. He contends specifically that his due process rights were violated because Officer Edmondson interrogated him regarding the charges lodged in Greene County outside the presence of the attorney representing him on related breaking and entering charges in Johnston County, and because he was questioned before he had the opportunity, in general, to consult with counsel. Because his confession to Officer Edmondson was wrongfully obtained, says defendant, his subsequent statements should also be suppressed, pursuant to the presumption enunciated in *State v. Fox*, 274 N.C. 277, 163 S.E. 2d 492 (1968), that where a confession is obtained under circumstances that render it involuntary, subsequent confessions are also presumed to be involuntary.

We agree with defendant that his right to counsel had attached, since the proceedings against him had begun at the time of the interrogation, but we think *State v. Smith*, 294 N.C. 365, 241 S.E. 2d 674 (1978), is dispositive. There the Supreme Court held that "in determining the admissibility of a confession by a suspect in custody, the crucial question is whether the statement was freely and understandingly made after he had been fully advised of his constitutional rights and had specifically waived his right to remain silent and to have counsel present." *Id.* at 376, 241 S.E. 2d at 681. *State v. Smith*, based on strikingly similar facts to those in the case before us, clearly sets out this state's law regarding waiver of right to counsel when a defendant is represented by a counsel in a proceeding unrelated to the charges under investigation. The record here, just as in *Smith*, offers no indication that defendant's counsel in the Johnston County matter

also represented defendant in this case. Even had that attorney entered the Greene County proceeding on defendant's behalf — which he apparently had not — defendant would have retained his right to waive counsel. Significantly, the trial judge found that defendant waived his right to counsel before making the statement to Edmondson, and that the statement was "freely, knowingly and understandingly made without threats or promises having been made to him."

At this point, it need only be said that the rule "that a defendant in custody who is represented by counsel may not waive his constitutional rights in counsel's absence, is not the law in this State." *Id.* at 375, 241 S.E. 2d at 680. The position taken in defendant's second argument finds authoritative basis only in the laws of a few jurisdictions which have followed *People v. Arthur,* 22 N.Y. 2d 325, 292 N.Y.S. 2d 663, 239 N.E. 2d 537 (1968). Defendant's argument that interrogations conducted in the absence of counsel violate Disciplinary Rule 7-104 of the North Carolina Code of Professional responsibility is unpersuasive. This Code section proscribes only certain conduct by members of the legal profession during the course of representation and does not prevent persons in custody from making inculpatory statements upon waiver of the right to counsel.

[3] Defendant's contention that he should be granted a new trial because the prosecutor attempted to use his prior convictions as substantive evidence of his guilt is not compelling. He contends that the cross-examination of defendant regarding whether Phillip Carraway had pled guilty in the same case in Johnston County in which defendant was convicted of two separate charges of breaking and entering was an attempt to imply that defendant was with Carraway during the Shackleford breakin in Greene County. The state responds that the question was part of an inquiry into the relationship between defendant and Carraway and was, therefore, properly allowed by the trial judge. We agree. The general rule is that when a defendant in a criminal action testifies in his own behalf, the prosecutor may, for the purpose of impeachment and attacking his credibility as a witness, cross-examine him as to previous criminal convictions. *State v. Goodson,* 273 N.C. 128, 159 S.E. 2d 310 (1968). Defendant, however, points to the further cross-examination during which defendant was asked if Phillip Carraway was one of the persons who pled in the Johnston

*County proceedings.* His contention that evidence of prior convictions is admissible only to impeach a defendant's credibility as a witness reflects a misunderstanding of the law. It is a well-settled rule that

> . . . [e]vidence of other offenses is inadmissible if its only relevancy is to show the character of the accused or his disposition to commit an offense of the nature of the one charged; but if it tends to prove any other relevant fact it will not be excluded merely because it also shows him to have been guilty of an independent crime.

1 Stansbury's N.C. Evidence § 91 (Brandis rev. 1973), quoted in *State v. Fletcher* and *State v. St. Arnold,* 279 N.C. 85, 181 S.E. 2d 405 (1971). Evidence of the prior crime was admissible to show the relationship between defendant and Carraway. That relationship is pertinent in light of the significant role played by Carraway in the conversation leading to defendant's statement of 27 January 1981, made in the presence of Carraway and Deputy Story. It is also reasonable to assume that the prosecutor may have thought Carraway would be called to testify, since the trial judge directed that Carraway remain in the Greene County jail in the event he was subpoenaed as a witness.

[4] Defendant argues that he is entitled to a new trial because he was cross-examined regarding the price of drugs and source of the money he used to buy them. However, "[t]he existence of a motive which prompts one to do a particular act, may be considered as 'a circumstance tending to make it more probable that the person in question did the act, hence evidence of motive is always admissible when the doing of the act is in dispute,' Stansbury, N.C. Evidence, Sec. 83." *State v. Church,* 231 N.C. 39, 42, 55 S.E. 2d 792, 795 (1949). Evidence of attempts to borrow money prior to the commission of an offense was held competent as a motive, showing defendant's need of money, in *State v. Cain,* 175 N.C. 825, 95 S.E. 930 (1918), and *State v. Ham,* 224 N.C. 128, 29 S.E. 2d 449 (1944). Defendant's attempts to distinguish these cases from the facts *sub judice* are unconvincing. Moreover, the prosecutor's inquiry had bearing on the veracity of defendant's claims that he used drugs extensively, that he was under the influence of drugs at the time he spoke to Deputy Pascasio, and that he was suffering from the effects of drug withdrawal when he talked to Officer Edmondson.

**[5]** Finally, defendant urges that he is entitled to a new trial because he was prejudiced by reference to his arrest for other crimes. He calls attention to statements made from the stand by Deputies Pascasio and Story. Deputy Pascasio, when asked by the state how he came to have a conversation with defendant, replied, "I arrested Mr. Romero for the second degree burglary of a house in Pitt County, North Carolina." When asked where he had seen defendant on 27 January 1981, Deputy Story said: "I first saw him at the Pitt County Jail in Greenville." To both questions objections were made in a timely fashion. The trial judge sustained both objections and twice instructed the jury not to consider the testimony elicited. Though the testimony concerning defendant's prior arrests may have tended to impeach his character and credibility before defendant put his character in issue, the judge's cautionary instructions were curative of any prejudice. Furthermore, defendant's evidence, including his own testimony, conveyed the same information he now alleges to be prejudicial error.

In defendant's trial and the judgment rendered, we find

No error.

Judges HEDRICK and MARTIN (Robert M.) concur.