OPINION OF THE COURT
M. Arthur Eiberson, J.
The defendant, George Nigohosian, is charged with a violation of section 1192 (2) of the Vehicle and Traffic Law, operat *844 ing "a motor vehicle while [under the influence of alcohol or drugs with] .10 of one percentum or more by weight of alcohol in his blood as shown by chemical analysis of his * * * breath”.
A hearing was held before me on January 22, 1988 on the issue of the propriety of the police in administering the breathalyzer test and the admissibility of the results thereof. Police Officer Sullivan, Police Officer Annese, Police Officer Johnson and defendant George Nigohosian testified. There was also a stipulation on the record between counsel for defendant and People regarding testimony of counsel.
The court makes the following findings of fact based upon the credible evidence adduced at the hearing.
FINDINGS OF FACT
On August 10, 1987 at about 10:56 p.m., Police Officer Sullivan received an assignment via radio, while on patrol, to report to the scene of an automobile accident on Newbridge Road and Columbus. The accident was a rear-end collision. The defendant, while operating his Jaguar, drove into the rear end of a station wagon which had stopped in front of his car. Police Officer Annese arrived at the scene about 11:15 p.m. and assisted Police Officer Sullivan in arresting the defendant on charges of violating section 1192 (2) of the Vehicle and Traffic Law.
Together, Officers Sullivan and Annese transported defendant in Officer Sullivan’s police car to the Central Testing Unit of the Nassau County Police Department at police headquarters on Franklin Avenue in Mineóla. Police Officer Sullivan drove while Police Officer Annese was in the back seat with the defendant, who was now in handcuffs.
After arrival at police headquarters, the two officers took defendant to the Central Testing Unit where they were joined by Police Officer Johnson, the breathalyzer technician. At the Central Testing Unit, Police Officer Sullivan read to the defendant the defendant’s authorization portion of police department form 38, which is the authorization to submit to a breathalyzer test of defendant’s breath and advises the defendant of the consequences of a refusal to submit to the test.
Defendant, after being read the authorization, requested permission to make a telephone call. Permission was granted and he gave the officers his attorney’s phone number and they placed the call for him. The defendant spoke to his attorney who also spoke to Officer Sullivan. The attorney only asked *845 the officers as to his client’s physical condition and the condition of the driver of the other car (who apparently was injured in the accident and transported by ambulance to a hospital). This call had a duration of about nine minutes.
At the conclusion of the call, the defendant told the police that his attorney had advised him not to take the test. The defendant stated that he did not know what to do as he felt his attorney was young and was his business attorney, and he was not sure if he had experience in this area. Defendant asked the officers what he should do.
The officers advised defendant that they could not tell him what to do. They read the authorization again to the defendant and Police Officer Johnson explained to him the following alternatives:
If defendant took the test and "passed” it, then he would not be charged, and he would be taken back to the scene of the accident and released. If he "failed”, he could be charged with either driving while impaired or intoxicated, depending upon the results of the test, and held overnight for arraignment in the morning. If the defendant refused to take the test, then he would still be held overnight for arraignment in the morning on a charge of driving while intoxicated (violation of section 1192 [3] of the Vehicle and Traffic Law) and that his license would be suspended and subsequently could be revoked by the Department of Motor Vehicles after a hearing within 15 to 30 days.
After this exchange, the defendant agreed to take the test, although he would not sign the authorization form.
The stipulation between counsel and the District Attorney was that if counsel testified, then he would testify as to his advice to defendant and the conversation related above with Officer Sullivan.
After Police Officer Johnson administered the test, the defendant requested permission to make two telephone calls and the permission was granted. The first call was to an unknown party and the second call was to counsel. Defendant did not request to call counsel or anyone else prior to agreeing to take the test after the second reading of the authorization and the explanation of the consequence of taking or refusing to take the test.
CONCLUSIONS OF LAW
Counsel for defendant argues that the police, after becoming *846 aware that counsel had entered the case and had advised the defendant not to take the breathalyzer test, thereafter should not have administered it. After having done so, the results must be suppressed.
In a Fifth Amendment situation where the defendant is about to be interrogated and a self-incriminating statement may be made, it is quite clear that once counsel has entered the case, the police may not further interrogate the defendant (People v Arthur, 22 NY2d 325). Nor for that matter may the police interrogate if they know or should know that the defendant is represented by counsel in another matter, even if that matter is unrelated to the matter under investigation (People v Rogers, 48 NY2d 167). It is equally clear in Fifth Amendment situations, a defendant who is represented either in the instant matter or even in another unrelated matter, the defendant may not waive his right to counsel, without counsel present (People v Rogers, supra).
In the Fifth Amendment situations, there is clearly an unqualified right to counsel. However, in the instant situation, dealing with the administration of a breathalyzer test, there is, at best, a qualified right to counsel. In People v Gursey (22 NY2d 224, 229) the Court of Appeals stated: "The privilege of consulting with counsel concerning the exercise of legal rights should not, however, extend so far as to palpably impair or nullify the statutory procedure requiring drivers to choose between taking the test or losing their licenses * * * But, to be sure, there can be no recognition of an absolute right to refuse the test until a lawyer reaches the scene (see Matter of Finocchairo v. Kelly, 11 N Y 2d 58, 61 * * *). If the lawyer is not physically present and cannot be reached promptly by telephone or otherwise, the defendant may be required to elect between taking the test and submitting to revocation of his license, without the aid of counsel.”
In People v Hager (69 NY2d 141), it was held by the Court of Appeals that performance tests and breathalyzer tests are not testimonial or communicative in nature in that they do not require revelation of a person’s subjective knowledge or thought processes and, therefore, Fifth Amendment rights are not involved and Miranda warnings were not required to be given.
It must be noted that in the instant case, the defendant was accorded his qualified right to counsel since he telephoned counsel twice: one before he decided to take the test and once *847 subsequent to taking the test. Although defendant indicated to police that his attorney advised against taking the test, he did not, at any time, refuse to take the test, but rather requested advice from the officers.
The officers did not advise the defendant what to do. However, they did again advise him of the consequences of refusing the exam and the various options, whereupon the defendant agreed to submit to the exam.
We must also bear in mind that, pursuant to section 1194 (1) of the Vehicle and Traffic Law, every person operating a motor vehicle in the State of New York is deemed to have given his consent to a chemical test of his breath, etc., nor does a person have a constitutional right to refuse to submit to the breathalyzer test (People v Thomas, 46 NY2d 100, 106).
Vehicle and Traffic Law § 1194 (4), regarding the introduction of evidence at a trial of a refusal to take the breathalyzer test, requires that such refusal must be a persistent refusal. (People v Thomas, supra.) Thus, even if the defendant had unequivocally refused to take the breathalyzer test, this court is of the opinion that the police would have been required to at least inquire once more (which they did not do here as the defendant opened the inquiry anew after conferring with counsel and not being sure of what to do) as to whether or not the defendant wished to take the test in order to insure that the refusal was persistent pursuant to Vehicle and Traffic Law § 1194 (4) and that the evidence of the refusal could be introduced.
Finally, we must also be cognizant of those cases where the defendant, after having been given his Miranda warnings and invokes the right to counsel, makes spontaneous statements of confession after counsel enters the case (People v Arthur, supra) when the police know, or have reason to know the defendant was represented and they, as required, cease questioning the defendant. (People v Rogers, supra.) These spontaneous statements have been held to be admissible and not in violation of defendant’s right to counsel. If we were, in the instant case, dealing with a Fifth Amendment right, under People v Keye (25 NY2d 139), People v Tompkins (45 NY2d 748) and People v Maerling (46 NY2d 289), the statements (if we were dealing with statements) would be admissible and not suppressed, as they were not the result of police interrogation, threats or overbearing actions of the police. Thus, certainly the breathalyzer results, which are nontestimonial and not *848 protected by the Fifth Amendment, should not, given the facts here presented, be suppressed and should be admitted on the trial of the case.
Accordingly, in the instant case, there is only a qualified right to counsel which was exercised. There was no refusal, per se, communicated to the police, only that counsel advised defendant not to take the test. There is no absolute right to counsel, nor a constitutional right to refuse to take the breathalyzer test. The fact that counsel did appear in the case does not, in the opinion of the court, prohibit the police from accepting a later consent to take the test and administering the test in the absence of counsel. However, the waiver of counsel would have been prohibited under People v Arthur (supra), in a Fifth Amendment self-incrimination situation, unless counsel was present at the waiver. There is, at best, a qualified right to counsel and there is no requirement that any such waiver of that limited right be in the presence of counsel.
Since this is not a Fifth Amendment right to counsel situation, there exists only a limited right to counsel at best, which limited right was not denied. The cases which hold that the right to counsel, once having been invoked, cannot be waived in the absence of counsel, apply only in Fifth Amendment self-incrimination situations. Even in these situations, where counsel has appeared and the right to counsel has been invoked and interrogation stopped, a statement or admission occurring spontaneously and not the product of police interrogation, or prodding, would be admitted. Accordingly, the court holds that the defendant’s right to counsel has not been violated, and that the appearance of counsel is not a bar to the police administering the test to defendant on the defendant’s consent freely given. The breathalyzer test results will not be suppressed, and may be introduced into evidence at the trial of this matter.