**UNITED STATES of America ex rel.
Danny CLARK, Petitioner,**

v.

**John ZELKER, Warden of Green Haven
Prison, Respondent.**

**No. 70 Civ. 4911.**

United States District Court,
S. D. New York.

Feb. 1, 1971.

Danny Clark, pro se.

Louis J. Lefkowitz, Atty. Gen. of N. Y., New York City, for respondent; Michael Colodner, Asst. Atty. Gen., of counsel.

### OPINION

MacMAHON, District Judge.

Petitioner, presently confined at Green Haven State Prison, moves for a

writ of habeas corpus under 28 U.S.C. § 2254, attacking collaterally a conviction for robbery and possessing a dangerous weapon, imposed upon him by the Supreme Court, New York County, on March 5, 1968 after a jury trial. Allegedly, the conviction was obtained in violation of petitioner's constitutional rights under the Fifth, Sixth, Eighth and Fourteenth Amendments.

Specifically, petitioner claims (1) that there was an illegal and suggestive pretrial confrontation by the victim which was conducive to mistaken identification, (2) that hearsay testimony was improperly introduced against him, (3) that he was prejudiced by discussion between the court and his counsel concerning a ruling on evidence, (4) that there was a complete absence of any evidence of commission of the crime charged, and (5) that his sentence was excessive and cruel and unusual punishment.

Petitioner claims that there was a suggestive pre-trial confrontation and that his constitutional rights were violated when the victim of the robbery was allowed to identify him at trial. He alleges that he was not advised of his constitutional rights prior to the confrontation and that he did not have counsel at this critical stage of prosecution.

This confrontation took place on June 20, 1967 and is, therefore, governed by the principles laid down by the Supreme Court in United States v. Wade, 388 U. S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). Petitioner should have been told that there was to be a confrontation for the purposes of identification and that he was entitled to have his lawyer or one appointed by the state present at the identification procedure. United States v. Wade, *supra*; United States v. Ayers, 426 F.2d 524 (2d Cir. 1970). But every lineup without counsel does not require rejection of in-court identification by a witness to whom the accused was exhibited before trial. Such identi-

fication is admissible if the government can "establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification." United States v. Wade, *supra*, 388 U.S. at 240, 87 S.Ct. at 1939.

The trial judge held a pre-trial hearing on defendant's motion to suppress the identification by the victim. On such a hearing, "the effort must be to determine whether, before the imprint arising from the unlawful identification procedure, there was already such a definite image in the witness' mind that he is able to rely on it at trial without much, if any, assistance from its successor." United States ex rel. Phipps v. Follette, 428 F.2d 912, 915 (2d Cir. 1970). After a full hearing, the trial judge found that the identification of petitioner by the victim was clearly based on recognition independent of the pre-trial confrontation.

■ After reviewing the testimony upon the state hearing, we agree with the state court's finding that the state established by clear and convincing evidence that there was a basis of recognition independent of the tainted confrontation.

The victim of the robbery, Maria Padilla, testified that she was robbed by two men on the morning of June 6, 1967. She was on her way to the apartment of a friend, Mrs. Martines, when she entered the elevator in a building at 1581 Park Avenue, New York City. A man followed her into the elevator and called to another man, "Come on, Danny." The two men robbed her as the elevator travelled from the first to the eighth floor.

Two weeks later, on June 20, 1967, Miss Padilla saw petitioner on the street near the building in which she had been robbed. Miss Padilla had been shopping for groceries, and she returned to the nearby store to get her friend, Mrs. Martines. The two women returned to the apartment building, and as they entered two policemen approached them

wanting to know "what was the matter?" Miss Padilla explained that she had just seen one of the men who had robbed her. She told the policemen where he was and described his clothing. The policemen sent the two women to Mrs. Martines' apartment and proceeded to the place indicated by Miss Padilla. They found petitioner, he fitted the detailed description given by Miss Padilla, and took him and his friend to the Housing Authority office.

The challenged confrontation took place shortly afterward. Patrolman Lucky Washington brought Miss Padilla to the Housing Authority office and had her look through a peephole in a door. Miss Padilla identified petitioner as one of the men who had robbed her and as the man she had described to the policemen earlier. There was another Negro male in the room with petitioner, but Miss Padilla did not remember seeing him.

The state relies primarily on the on-the-street recognition by Miss Padilla to prove that the in-court identification was based on observations of the suspect other than the confrontation. Miss Padilla saw petitioner on a New York City street, recognized him as one of the robbers and promptly informed nearby policemen. This on-the-street identification preceded the tainted confrontation and is clear and convincing evidence that there was a definite image in Miss Padilla's mind on which she could rely at trial without much, if any, assistance from the tainted confrontation. United States ex rel. Phipps v. Follette, *supra*.

The state has established by clear and convincing evidence that the in-court identification was based on observations of the suspect other than the confrontation, and the victim's courtroom identification was, therefore, properly allowed. United States v. Wade, *supra*.

■ Petitioner's claim that hearsay testimony was improperly received is without merit. Errors in a state court's evidentiary rulings are not grounds for federal habeas corpus relief. United

States ex rel. Hardy v. McMann, 292 F. Supp. 191 (S.D.N.Y.1968). In any event, it appears that the alleged hearsay came out in response to questions asked by petitioner's counsel.

■ Petitioner's claim that he was prejudiced in the eyes of the jury by a discussion between his counsel and the trial judge is also without merit. The discussion concerned the admissibility of a police report offered as evidence by defense counsel. The trial judge first ruled that the whole report must be received or nothing, but, after the discussion in question, he granted defense counsel's request and only one page was received.

The discussion would not in any way have led the jury to believe that the court had any opinion as to the guilt or innocence of the defendant and does not, therefore, support petitioner's claim of prejudice. United States v. Mayersohn, 413 F.2d 641 (2d Cir. 1969), cert. denied, 397 U.S. 906, 90 S.Ct. 903, 25 L. Ed.2d 87 (1970).

■ Petitioner's fourth claim, that there was no competent evidence to support his conviction, is frivolous. Petitioner was identified by the victim as the man who had robbed her, and a ring identified as the one taken from the victim was pawned in petitioner's name on the day of the robbery. There is certainly competent evidence of the commission of the crime charged, and, in any event, the claimed insufficiency of this evidence is not a ground for federal habeas corpus relief. United States ex rel. Griffin v. Martin, 409 F.2d 1300, 1302 (2d Cir. 1969).

■■ Petitioner's final claim is that his sentence was excessive and cruel and unusual punishment. Petitioner was sentenced to 15 to 20 years for robbery in the first degree. This sentence is well within the statutory limit of not less than 10 nor more than 30 years. Former N.Y. Penal Law, McKinney's Consol.Laws, c. 40, § 2125. When the sentence imposed is within the statutory limit, it cannot be attacked as cruel and

unusual punishment. United States v. Dawson, 400 F.2d 194, 200 (2d Cir. 1968), cert. denied, 393 U.S. 1023, 89 S. Ct. 632, 21 L.Ed.2d 567 (1969).

Accordingly, petitioner's application for a writ of habeas corpus is denied in all respects, and a certificate of probable cause will not be issued by this court.

So ordered.