Edward C. FORMAN, Petitioner,

v.

Harold J. SMITH, Superintendent, Attica Correctional Facility, Respondent.

Civ. 75–518.

United States District Court,
W. D. New York.

Dec. 26, 1979.

Tigar & Buffone, Washington, D. C. (John J. Privitera, Washington, D. C., of counsel), for petitioner.

Robert Abrams, Atty. Gen., New York City (James L. Kennedy, Asst. Atty. Gen., Buffalo, N. Y., of counsel), for respondent.

CURTIN, Chief Judge.

Petitioner Edward C. Forman was convicted of second degree murder after a jury trial in New York Supreme Court, Erie County, in January 1973. In February of that year a brief recantation hearing was held before the trial judge, the Honorable Charles Gaughan, to determine whether the petitioner's wife, codefendant Florence McClain, was recanting part of her trial testimony which had implicated the petitioner. A motion to set aside the verdict based on the alleged recantation was denied in May 1973. The Appellate Division affirmed the conviction without opinion. *People v. Forman*, 45 A.D.2d 820, 358 N.Y. S.2d 353 (4th Dep't 1974). The Court of Appeals denied leave to appeal on September 18, 1974. Forman's petition for writ of certiorari was denied by the United States Supreme Court. *Forman v. United States*, 420 U.S. 1007, 95 S.Ct. 1451, 43 L.Ed.2d 765 (1975).

Petitioner then filed a petition for a writ of habeas corpus in this court which subse-

quently was amended in October 1976 after counsel was assigned. Pursuant to a stipulation between the parties, a stay of this proceeding was ordered until petitioner's post-conviction motion under New York Criminal Procedure Law § 440 was decided by the New York courts.[1] That motion was denied both initially and on appeal, and the stay was lifted on December 1, 1977. On April 25, 1978, this court conducted an evidentiary hearing as to the facts underlying petitioner's claim that his pretrial statement, used by the prosecution at trial, was obtained in violation of his sixth amendment right to counsel. Legal memoranda were provided and the petition was submitted for decision.

## FACTUAL BACKGROUND

In the early morning of May 15, 1972, Archie Gilliland was found shot to death at the residence of petitioner and his wife, Florence McClain. Detectives Edward Gorski and Gerald Dove questioned McClain at the house. She initially told them that a gang had broken into the house and had shot the decedent. Upon further questioning, she stated that she had shot the victim with a pistol and then thrown the pistol away. Finally, she told Detective Gorski that she had used a rifle and had given it to an unknown man who came to the door at the time of the shooting. Florence McClain was taken into custody and charged with murder.

At 7:00 a. m. the same morning, petitioner was detained briefly by the detectives for questioning in a home across the street from where the body was found. He de-

nied any knowledge of the shooting and was not charged. Two days later, on May 17, 1972, a Willie James Harris turned a rifle in to Buffalo Police Headquarters. Harris stated that Forman gave him the rifle after the shooting and that Forman told him his wife had just killed a man.

On May 22, 1972, Florence McClain, in the presence of counsel, made a statement to police. She said that she had not shot Archie Gilliland and that she believed her husband had. McClain further claimed that she had been awakened on May 15, 1972 by a gunshot and had seen petitioner and a John Adams leaving her house, petitioner carrying a rifle in his hand. Petitioner's wife took a polygraph examination on May 24, 1972 which indicated that she had told the truth on May 22. She was then released and the charges against her were dropped.

Four months later, on September 19, 1972, Forman was arrested on three outstanding warrants, two for vehicle and traffic offenses and one for possession of a weapon. Later that day, Lieutenant Leo Donovan signed an information charging Forman with hindering the prosecution and tampering with physical evidence in connection with the death of Archie Gilliland in May. This was based on Harris' sworn affidavit of May 17, 1972, signed when Harris turned in a rifle to the police. Donovan and Detectives Gorski and Dove questioned the petitioner at this time about Gilliland's death. Prior to questioning, they read him his rights from a form waiver card.[2] For-

1. N.Y.Crim.Proc.L. § 440.10(1) provides for a motion to vacate the judgment upon the ground that: "(h) The judgment was obtained in violation of a right of the defendant under the constitution of this state or of the United States."

Section 440.10(2) provides that such motion must be denied when:

\* \* \* \* \* \*

(c) Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable

failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him; . . . .

2. Petitioner's Exhibit 2 is a copy of the card from which Lieutenant Donovan read petitioner his warnings and rights. The front side appears in the following form:

WARNING—SUSPECT'S RIGHTS
1. You have the right to remain silent.
2. Anything you say can and will be used against you in a court of law.
3. You have the right to talk to a lawyer and have him present with you while you are being questioned.

man at first wrote his initials on the back of the waiver card and then scratched them out. *See* Petitioner's Exhibit 7. He denied any involvement in the shooting and refused to execute any signed statement. On the following day, September 20, 1972, Forman was arraigned in Buffalo City Court on the hindering prosecution and tampering charges. He retained attorney James Robinson, Jr. who later represented him on this matter. (Federal Hearing ["F.H."] at 61, 62). There is a dispute in the testimony from the evidentiary hearing as to whether or not Lieutenant Donovan was present at the arraignment. Forman was unable to post bail and was remanded to the custody of the Erie County Sheriff.

On September 29, 1972, while Forman was still in custody, he and his wife were indicted on one count each of second degree murder in the death of Archie Gilliland. After a telephone call to the Erie County Sheriff made on behalf of Lieutenant Donovan, petitioner was brought to the Homicide Bureau of the Buffalo Police Department that evening at about 8:00 p. m. pursuant to an indictment warrant. He was questioned until approximately 9:22 p. m. by Donovan and Officers Gorski and Dove. Prior to questioning, Forman was read his rights from the form waiver card (*supra*, n.2), but he did not sign this card. Petitioner was questioned about Gilliland's death. He denied any involvement. At 9:22 p. m., Forman left the Homicide Bureau office. While being escorted to the men's cellblock, he asked Officer Gorski whether his wife also had been charged and was told that she had been. Gorski testified that at this point petitioner states: "Florence didn't kill him, John didn't, I didn't either." Petitioner was returned immediately to the homicide office and again advised of his rights. According to the uncontradicted record (*see* Petitioner's Exhibit 4), Forman admitted to

owning the gun. His original story was that a man named John Adams had shot the victim. Forman later admitted that he had been passing a rifle back and forth with John Adams and that it accidentally discharged, striking Gilliland who was on the couch. (F.H. 58). Forman was never asked by the officers whether he was represented by counsel, nor did he volunteer that he was. Lieutenant Donovan was aware at the time of questioning, though, that Forman had been arraigned on the tampering charge and he assumed that Forman was represented by counsel. (F.H. 35). Donovan testified that he did not know that the attorney was James Robinson, Jr. In any case, Robinson was never notified of the indictment or questioning.

A pre-trial *Huntley* hearing was conducted by the trial court to determine the admissibility of Forman's statement. Officers Donovan, Gorski, and Dove testified about the circumstances surrounding their interrogation of Forman on September 29, 1972. Donovan testified that after returning to the homicide office and after being read his rights, petitioner indicated his willingness to make a statement (which is discussed above). He also stated that petitioner was incarcerated prior to September 29 on charges "unrelated" to the Gilliland homicide. The issue of legal representation by Robinson was never developed and Robert Casey, Forman's appointed trial counsel, did not press this issue. The trial court ruled that the statement by Forman was voluntary, made after a knowing and intelligent waiver, and admissible.

At trial, much of the evidence was circumstantial. The only witness against petitioner was his wife. She essentially repeated her earlier story that she had seen Forman running out the door after she had been awakened by a gunshot. Forman tes-

---

4. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning, if you wish one.
The back side of the card appears in the following form:
 WAIVER
After the warning and in order to secure a waiver, the following questions should be

asked and an affirmative reply secured to each question.
1. Do you understand each of these rights I have explained to you?
2. Having these rights in mind, do you wish to talk to us now?
Commissioner of Police, Buffalo, N. Y.

tified on his own behalf. He said that, after he and a John Adams arrived at his home, he was in the kitchen when he heard a shot fired from the living room. He ran into the room only to see Adams moving out the door. Forman chased him unsuccessfully. Adams was not located. When confronted by the prosecution with his earlier statement that he had accidentally shot the victim, Forman stated that he had fabricated it in order to protect his wife from criminal liability. Trial counsel did not challenge the admissibility of the statement. Forman was convicted and his wife was acquitted.

One month later a recantation hearing was held. Florence McClain admitted that she had told Forman that she had lied when she testified that she saw him leave the scene with a rifle. When asked whether her trial testimony was in fact false, she asserted her fifth amendment privilege against self-incrimination. The trial judge denied petitioner's motion for a new trial. His opinion reasoned that her motive to falsify her testimony, after she had been acquitted herself, devalued her recantation testimony. He also took notice of evidence which had been precluded at the trial; this was her pre-trial statement implicating her husband and the results of a polygraph examination relating to that statement which showed she had been telling the truth. The trial judge concluded no credible recantation had occurred.

Petitioner asserts three grounds for relief in this habeas corpus proceeding: (1) petitioner's pre-trial statement which implicated him in the death of Gilliland was obtained in violation of his sixth amendment right to counsel; (2) the trial court's refusal to instruct the jury on criminally negligent homicide invaded the province of the jury, denying him a fair trial; and (3) the recantation hearing violated his rights under the compulsory process and confrontation clauses of the Constitution. The initial question to be considered is whether petitioner has satisfied the exhaustion requirements of 28 U.S.C. § 2254(b) and (c).

■ It is clear that no avenue of relief remains open in state court. Petitioner's motion to vacate his judgment under N.Y. Crim.Proc.L. § 440 was denied and leave to appeal also was denied. Therefore, no state collateral relief is possible and petitioner is properly before this court. *Humphrey v. Cady,* 405 U.S. 504, 516, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972).

■ An additional procedural barrier to a review of the merits of petitioner's constitutional claims remains. The question raised is whether petitioner's procedural default in state court precludes this habeas court from examining those claims. With respect to petitioner's first claim that his sixth amendment right to counsel was violated, the ruling of the trial court at the *Huntley* hearing, that the petitioner had waived his rights before making his statement, was never challenged on appeal. In New York, CPL § 440.10(2)(c) precludes collateral attack on a judgment for unjustifiable failure to raise an issue upon an appeal. A number of Supreme Court cases provide guidance as to whether this failure precludes review in this court.

The first in an important series of cases is *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). In that case, petitioner had failed to bring any appeal of his state conviction. The Supreme Court held, nonetheless, that the petitioner was entitled to federal habeas review since such review is precluded only if a "deliberate bypass" by the petitioner himself underlies the procedural default. *Fay, supra,* at 439, 83 S.Ct. 822. The scope of *Fay* was brought into question with the Court's decision in *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976). This case held that a petitioner's failure to raise a pre-trial objection to grand jury composition, as required by state law, barred review by the habeas court absent a showing of "cause" for the procedural waiver and "actual prejudice" flowing from it. *Francis, supra,* at 542, 96 S.Ct. 1708. The Supreme Court in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), continued the trend it had shown in *Francis.* It held that

a defendant who failed to comply with a state's contemporaneous objection rule with respect to the introduction of a confession was not entitled to federal habeas review of a claim that he failed to understand a *Miranda* warning, absent cause for noncompliance with the state procedure and resulting prejudice. The Court did not define the cause and prejudice test, noting only that it was narrower than the deliberate bypass test of *Fay.*

In spite of the Supreme Court's narrow reading of *Fay v. Noia,* there is no question that the *Sykes* Court did not overrule that case. But, whether the *Sykes* cause and prejudice test applies to procedural defaults at the state appellate level or whether the *Fay v. Noia* deliberate bypass test applies has not been decided. Three lower federal courts have held that the cause and prejudice test applies to alleged waivers of constitutional claims at state appellate levels. *Evans v. Maggio,* 557 F.2d 430 (5th Cir. 1977); *United States ex rel. Carbone v. Manson,* 447 F.Supp. 611 (D.Conn.1978); *Frazier v. Czarnetsky,* 439 F.Supp. 735 (S.D. N.Y.1977). The Second Circuit recently avoided reaching this question, but noted that to some extent the *Fay v. Noia* rule had been undercut by *Sykes. See Gale v. Harris,* 580 F.2d 52, 53, n.1 (2d Cir. 1978). The court believes that the merits of petitioner's claim should be reviewed whichever test is applied.[3]

Petitioner contends that Lieutenant Donovan's testimony at the pre-trial *Huntley* hearing, to the effect that petitioner had been incarcerated on a charge *unrelated* to the homicide for which he had been indicted and questioned, obscured the issue of whether the officers were required to notify petitioner's counsel prior to interrogating him. In fact, the tampering with evidence and hindering prosecution charges were di-

rectly related to the homicide arraignment and the police were treating them as such. *See* Petitioner's Exhibit 1. Under New York law at the time of trial, petitioner Forman may well have had a strong claim for New York cases precluded police from questioning a defendant in the absence of counsel, once an attorney has entered the proceedings, unless there has been an affirmative waiver of the defendant's right to counsel in the presence of the attorney. This holding applies where a defendant has counsel on a related charge. *See People v. Arthur,* 22 N.Y.2d 325, 292 N.Y.S.2d 663, 239 N.E.2d 537 (1968); *People v. Vella,* 21 N.Y.2d 249, 287 N.Y.S.2d 369, 234 N.E.2d 422 (1967); *People v. Stanley,* 15 N.Y.2d 30, 255 N.Y.S.2d 74, 203 N.E.2d 475 (1965). There could be little tactical advantage then in "sandbagging" this claim because the law in New York with respect to the admissibility of statements made outside the presence of counsel was more favorable to defendants than the federal constitutional law at that time.[4] For example, *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), upon which petitioner relies now, was not decided until 1977. Moreover, failure of petitioner to object at trial to the admission of the statements did not preclude appeal. *See Arthur, supra,* 22 N.Y.2d at 329, 292 N.Y.S.2d 663, 239 N.E.2d 537. This state of the law requires the conclusion that no knowing, deliberate bypass of an opportunity to raise a constitutional claim occurred within the meaning of the *Fay v. Noia* rule.

Application of the *Sykes* cause and prejudice test similarly does not preclude presentation of petitioner's sixth amendment claim. Petitioner has shown without any doubt sufficient reason why he did not object to the admission of his statement at the

---

**3.** The court believes that there is a strong argument for applying the *Fay v. Noia, supra,* rule. There are significant differences between the facts of this case and those of *Sykes, supra,* including the nature of the state procedural rule in question. The court also questions the applicability of *Sykes* here, where, as will be discussed *infra,* there is no possible suggestion that the petitioner's attorney was "sandbag-

ging" a claim, a factor much relied on by Justice Rehnquist in that case. Nonetheless, the court believes that under either case, petitioner is entitled to present his first claim.

**4.** *See* Rehnquist's discussion of "sandbagging" in *Sykes, supra,* 433 U.S. at 89–90, 97 S.Ct. 2497.

trial level. Officer Donovan's testimony that the charges on which Forman previously had been incarcerated were unrelated to the charge on which he was indicted and questioned was misleading. This misleading testimony obscured the relationship between the earlier arraignment on hindering and tampering charges, and the later indictment and questioning. This testimony by Lieutenant Donovan deflected the focus of the inquiry and prevented development of the record as to Forman's representation by counsel on a related charge at the time of the questioning. It is understandable then why petitioner's attorney did not press a sixth amendment or state claim objection at the trial level.

I believe that the officer's misleading testimony also constitutes sufficient cause for petitioner's failure to raise this claim on direct appeal. As noted above, the record for appeal with respect to whether or not the earlier charges and the later homicide indictment were related was not developed at the pre-trial *Huntley* hearing or at trial. It would have been preferable, of course, that petitioner's assigned counsel had investigated beyond the record. Under all of the circumstances, however, it is no surprise that the issue was not raised in petitioner's brief to the Appellate Division of Supreme Court. Under the *Sykes* test, petitioner has shown sufficient cause why this claim was not raised on direct appeal.

The second prong of the *Sykes* test requires a showing of prejudice. In this case, admission of the statements made on September 29, 1979 not only put petitioner at the scene of the homicide, it indicated that he was involved in Gilliland's death to some degree at least. Moreover, the statements showed that petitioner admitted ownership of the weapon which killed the victim. Prejudice has been shown and this part of the *Sykes* test also has been met. Therefore, the court must consider the merits of petitioner's first claim.

To restate this claim briefly, petitioner asserts that his right to the assistance of counsel under the sixth and fourteenth amendments was violated by the admission at trial of the incriminating statement he made to police on September 29, 1972. *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); *McLeod v. Ohio*, 381 U.S. 356, 85 S.Ct. 1556, 14 L.Ed.2d 682 (1965). In *Massiah*, the Supreme Court held:

[T]he petitioner was denied the basic protections of [the right to counsel] when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel.

377 U.S., at 206, 84 S.Ct., at 1203.

■ The viability of this holding has been affirmed recently in *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). The Supreme Court stated: "[T]he clear rule of *Massiah* is that once adversary proceedings have commenced against an individual, he has a right to legal representation when the government interrogates him." *Id.* at 401, 97 S.Ct. at 1240. At the same time, the Court expressly refused to hold that a defendant could not voluntarily waive his sixth amendment rights without notice to counsel. *Id.*, at 405–06, 97 S.Ct. 1232. *See also Alexander v. Smith*, 582 F.2d 212 (2d Cir. 1978). A waiver, however, "requires not merely comprehension but relinquishment." *Brewer, supra*, 430 U.S. at 404, 97 S.Ct. at 1242. *Carnley v. Cochran*, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962). Waiver, as a matter of federal constitutional law, requires the State to prove "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *Brewer, supra*, 430 U.S. at 404, 97 S.Ct. 1232.

The approach of the Second Circuit, both before and after *Brewer*, has been to require "some circumstance [beyond] the mere absence of counsel before a defendant's post-indictment statement is rendered inadmissible." *Wilson v. Henderson*, 584 F.2d 1185, 1190 (2d Cir. 1978). In *United States v. Garcia*, 377 F.2d 321 (2d Cir.), *cert. denied*, 389 U.S. 991, 88 S.Ct. 489, 19

L.Ed.2d 484 (1967), the court refused to extend the protection of the sixth amendment to a voluntary, incriminating statement made by a defendant to an officer where the officer was completely unaware of the existence of an indictment and was not seeking information about the crime charged in the indictment. The Second Circuit affirmed the conviction stating:

> *Massiah* was thus not aimed at all post-indictment evidence gathered by the prosecution, but at the narrow situation where, after indictment, law enforcement authorities have "deliberately elicited" incriminating statements from a defendant by direct interrogation or by surreptitious means. The rule does not apply to spontaneous or voluntary statements made by the defendant in the presence of government agents . . . .

*Id.*, at 324 (footnote omitted). In *Wilson v. Henderson, supra,* the Second Circuit denied a petitioner's sixth amendment habeas claim and, in doing so, it focused on the lack of any interrogation in distinguishing the facts of that case from *Brewer. Wilson v. Henderson, supra* at 1190–91.

■ Although the Second Circuit may not have adopted a *per se* exclusionary rule for statements made in the absence of, and without notice to, counsel, once the protection of *Massiah* has attached, *see United States v. Thomas,* 474 F.2d 110 (10th Cir.), *cert. denied,* 412 U.S. 932, 93 S.Ct. 2758, 37 L.Ed.2d 160 (1973), a high standard must be met in order to show that a defendant waived his right to counsel. It has been held that there must be "such warnings and explanations as would justify a court in permitting a defendant to proceed *pro se* at trial." *United States v. Satterfield,* 417 F.Supp. 293, 296 (S.D.N.Y.), *aff'd,* 558 F.2d 655 (2d Cir. 1976). Such warnings would require "that a defendant be made aware of 'the dangers and disadvantages of self-representation.' *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975)." *United States v. Miller,* 432 F.Supp. 382 (E.D.N.Y.1977). Thus, it must be recognized that the standard of waiver which applies to the sixth amendment right to counsel is higher than that which is applicable to fifth amendment waivers.

■ The particular circumstances surrounding the questioning of Forman have been set out above. Unlike many cases, there is no question here about whether his sixth amendment right to counsel had attached. *Kirby v. Illinois,* 406 U.S. 682, 688, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). Since petitioner had been indicted and, thus, adversary proceedings against him had commenced, petitioner was entitled to the assistance of counsel at every critical stage of the prosecution, in court or out. *See, e. g., United States v. Wade,* 388 U.S. 218, 226–27, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Moreover, petitioner had retained counsel, just one week prior to his indictment and to the questioning, on criminal charges directly related to the murder charge. Lieutenant Donovan signed the information with respect to these charges. Although the evidence is disputed as to whether Donovan was present at petitioner's arraignment on the charges, which might explain the extent of Donovan's knowledge concerning the petitioner's lawyer, Lieutenant Donovan testified that, at the time of the questioning on September 29, 1972, he assumed that Forman either had been assigned or had retained an attorney. Nonetheless, there was no request of petitioner as to who his attorney was or any notification to his lawyer of the indictment or the questioning. To proceed with questioning, under the existing New York law, and under these circumstances, was impermissible. *See Vella, supra,* 21 N.Y.2d at 251, 287 N.Y.S.2d 369, 234 N.E.2d 422.

■ The court also believes that the circumstances taken as a whole indicate that petitioner was being interrogated and that the officers were attempting to "deliberately elicit" incriminating statements from him within the meaning of *Massiah* and *Brewer.* Petitioner was first questioned on September 19, 1972, the day on which he was arrested for tampering with evidence and hindering the prosecution in connection with the homicide of Gilliland. The questioning was not limited to these charges but

was directed at petitioner's involvement with the homicide itself. *See* top of Petitioner's Exhibit 7, which indicated that the questioning related to the Gilliland investigation. Forman, unable to make bail, remained in custody until September 29, 1972, the day he was indicted for murder. He was taken to the homicide bureau office at 8:00 p. m. that night, and he was questioned from 8:00 until approximately 9:20 p. m., during which time he maintained his noninvolvement in the homicide. Respondent argues that Forman spontaneously volunteered to "tell his story" after returning from his walk to the cellblock, resulting in the incriminating statements. Respondent's argument is not persuasive. Even noting that Forman voluntarily returned to Donovan's office a second time, after Forman had been questioned by three officers for nearly an hour and one-half that night it would be difficult to view any statement by petitioner as spontaneous. Respondent also argues that petitioner's statement was not the result of surreptitious activity; but, as the Supreme Court stated in *Brewer, supra*, 430 U.S. at 400, 97 S.Ct. 1232, that fact is constitutionally irrelevant.

 In light of this discussion, unless petitioner effectively waived his right to counsel, *Massiah* and *Brewer* mandate that petitioner be afforded relief. Respondent argues, of course, and the trial court found, that Forman voluntarily and knowingly waived his right to counsel. The court first notes that this legal conclusion by the state trial judge is not binding here. Not only is this an ultimate constitutional issue, but where a state court made no finding on an issue of fact essential to its determination, the habeas court is entitled to make additional findings after an evidentiary hearing, as was held in this case. *See, e. g.,* discussion in *Brewer, supra,* at 395–97 and at 403–04, 97 S.Ct. 1232.

Respondent relies heavily, as did the trial court, on the testimony of Donovan that he read Forman the warnings and rights listed on the waiver card (Petitioner's Exhibit 2) and that Forman voluntarily made a statement after stating that he understood his rights. The court notes initially that "Right No. 3" on the waiver card informed petitioner that he was entitled to a lawyer and to have him present during any questioning. But, this brief statement does not in any way approach the explanation required by the courts in *Satterfield, supra,* and *Miller, supra,* about the dangers of going ahead without a lawyer. A court would not be justified in allowing a defendant to proceed without an attorney at trial by merely reading him the equivalent of Right No. 3.

 Moreover, whether petitioner actually understood the nature of the rights which were read to him appears doubtful. Forman's testimony, that he believed no oral statement he made could be used against him unless he signed a written statement, does not reflect a comprehension of the complex and essential right to counsel he was waiving. More importantly, the evidence suggesting that petitioner in fact relinquished the right, not just understood it, within the meaning of *Brewer* and *Zerbst*, is not overwhelming. On the one hand, there is testimony by Lieutenant Donovan that not only did Forman understand the rights which were read to him but that petitioner said he wanted to make a statement. On the other hand, petitioner never signed any waiver form, and actually scratched out his initials on the waiver form at the time of the September 20, 1972 questioning. *See* Petitioner's Exhibit 7. The notes taken on September 29, 1972 by the questioning officers show no evidence that petitioner signed or initialed any waiver form or statement. Even the notes taken by Officer Gorski do not indicate that petitioner answered "yes" to the question: "2. Having these rights in mind, do you wish to talk to us now?" There is a blank space where petitioner's answer to that question would have been marked. *See* Petitioner's Exhibit 3. The fact that Forman never asked to see his lawyer does not show that petitioner relinquished his right to counsel. The right to counsel does not depend on a request by a defendant. *Brewer, supra,* at 404, 97 S.Ct. 1232, *Carnley v. Cochran, su-*

*pra*, 369 U.S. at 513, 82 S.Ct. 884. The courts indulge in every reasonable presumption against waiver. *Brewer, supra*, 430 U.S. at 404, 97 S.Ct. 1232, *citing Brookhart v. Janis*, 384 U.S. 1, 4, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966). Under all of the circumstances of this case, I find as a matter of constitutional law that petitioner did not knowingly and intentionally waive his right to the assistance of counsel.

The court concludes, therefore, that at the time petitioner made the incriminating statements, later introduced against him at trial, he was denied his right to the assistance of counsel, guaranteed by the sixth and fourteenth amendments. Lieutenant Donovan signed the information charging Forman with hindering the prosecution and assumed, at the time of questioning on September 29, 1972, that Forman was represented by an attorney. Nonetheless, Donovan never asked Forman who his lawyer was and merely read him the list of rights on a form police waiver card. Under New York law at the time, it was impermissible to question Forman in the absence of an attorney representing him on a related charge and without a waiver. Moreover, from Forman's testimony it is clear that he did not understand his rights for, if he had, he would have said that his attorney was James Robinson. Finally, there is no evidence except the interrogating officers' that petitioner willingly waived his rights; in fact, Gorski's notes do not make it appear that Forman waived his rights and petitioner's conduct on September 20, 1972, in scratching out his initials, contradicts a willingness to relinquish them. The immediate post-indictment, pre-trial period is exactly the stage when legal advice may be most helpful. *Spano v. New York*, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1969). Since Forman was denied the right to counsel, the statements made during his interrogation were inadmissible and their admission at trial resulted in a denial of due process.

■ Petitioner also presents two other claims which are rejected. Forman argues first that the trial court's refusal to grant a jury instruction on criminally negligent homicide denied petitioner his sixth and fourteenth amendment rights to a fair trial by an impartial jury. Petitioner has sought all available state relief but, as with his first claim, there is a question whether this constitutional issue was raised on direct appeal.

Petitioner concedes that no claim based on a specific constitutional amendment was raised on direct appeal. He argues, however, that the claim was raised in substantially the same form, the very basis of which was that his due process rights had been violated. Forman argues that an implicit reliance on a constitutional right satisfies the exhaustion requirement.

The Supreme Court has held that the same ultimate legal question must have been presented to the state court before the exhaustion requirements of § 2254 are met. *Picard v. Conner*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). Petitioner's papers submitted to the Appellate Division claimed only a violation of New York's lesser-included offense statute, New York Crim. Proc.L. § 330.50. He essentially argued that the evidence presented at trial justified a jury instruction on criminally negligent homicide. The due process or fair trial argument of petitioner was never expressly made. The facts certainly were presented but, as in *Picard, supra*, that is not enough. This claim were not presented fairly to the state courts and habeas review is precluded.

■ Even if review were not foreclosed, a habeas court may not correct mere errors of state law. 28 U.S.C. § 2254(a); *see Schaefer v. Leone*, 443 F.2d 182 (2d Cir. 1971). A jury charge in a state trial is normally a matter of state law, not reviewable absent a showing that the alleged error is so severe as to amount to a denial of due process. *See, e. g., Henderson v. Kibbe*, 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977). No such showing has been made and petitioner's second claim is rejected.

■ The final claim of petitioner is that the recantation hearing violated his rights under the compulsory process and confron-

tation clauses of the Constitution. The compulsory process aspect of this claim relates to Florence McClain's assertion of her privilege against self-incrimination during the hearing; she conceded there that she had told her husband that she had lied during the trial, but she refused to answer any other material question. It is clear, however, that petitioner did not make any argument on appeal which in any way relates to his present compulsory process claim. Therefore, based on the discussion above, this claim was not fairly presented to the state courts and cannot be considered by this court.

The court also has serious reservations about whether the petitioner's confrontation clause claim was presented fairly to the state appeals courts. Petitioner's argument is that Judge Gaughan's decision to receive and consider (1) the results of a polygraph test administered to Florence McClain and (2) a pre-trial statement she had made implicating petitioner denied him the right to confront and cross-examine those who would introduce such documents. Both documents corroborated McClain's trial testimony, which petitioner claimed in the hearing had been recanted, and neither had been admitted at trial. Petitioner's brief to the Appellate Division does not contend directly that any federal constitutional right was violated. On the other hand, the brief did argue with respect to the pre-trial statement that Forman's attorney "never had a reason to closely cross-examine the persons present when the statement was made regarding the circumstances surrounding this statement." The Supreme Court, of course, requires only that the substance of a constitutional claim be presented to the state courts in order to secure habeas review. Although the above-quoted contention does not really articulate the confrontation clause claim, it arguably would have given the state courts notice of it.

 In any event, however, the merits of this claim do not require habeas relief. The law is well settled that matters relating to the admission of evidence are issues of state law, not reviewable by a habeas court

absent a showing that the admission constitutes a denial of fundamental fairness in the trial itself. *See, e. g., United States ex rel. Clark v. Zelker*, 321 F.Supp. 1085 (S.D.N.Y.1971). A review of Judge Gaughan's memorandum decision, attached as Exhibit A to Petitioner's Brief to the Appellate Division, makes clear that there was no such denial. There is no question that, of his own motion, he considered the results of the polygraph test and McClain's pre-trial statement in determining whether a credible recantation had occurred which required a new trial. If these documents had been admitted at trial to bolster McClain's testimony, petitioner would have had the right to cross-examine the witnesses who produced them. On the other hand, petitioner did have the opportunity to confront McClain at the trial as to the accuracy of her statement implicating him. Moreover, it is clear that Judge Gaughan did not rely exclusively on the evidence which is the subject of this argument. Rather, he relied on his opportunity to observe the witness, Florence McClain, at both the trial and the recantation hearing, on her possible motive to recant now that she could not be tried for the Gilliland murder, and on all the other circumstances of the case, including his belief that in fact no recantation had occurred. My review of the record requires the conclusion that no fundamental unfairness resulted. If a constitutional violation did occur, it was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

## CONCLUSION

Forman's petition for a writ of habeas corpus is granted on the basis of his first claim. Petitioner's second and third claims are rejected and form no basis for the granting of this writ. Judgment of conviction is vacated unless proceedings are begun within 60 days of this order to retry the petitioner.

So ordered.