*489 OPINION OF THE COURT
Edward J. McLaughlin, J.
A question of first impression is raised by the case now before the court. Does section 249-a of the Family Court Act, which states that "[a] minor who is a subject of a juvenile delinquency or person in need of supervision proceeding shall be presumed to lack the requisite knowledge and maturity to waive the appointment of a law guardian” (L 1978, ch 513), apply to a juvenile undergoing police interrogation? This court holds that it does.
I. FACTS
On October 25, 1978, a petition was filed with this court alleging that respondent, a 15-year-old boy, had committed an act which, if committed by a person over the age of 16 would be burglary in the third degree, a violation of section 140.20 of the Penal Law, a class D felony. After notice to the respondent by the Assistant County Attorney that the prosecution intended to introduce into evidence a confession made by the respondent to the police, counsel for the respondent moved for a hearing on the issue of the voluntariness of the confession. (Jackson v Denno, 378 US 368; People v Huntley, 15 NY2d 72.) Juvenile proceedings are, at the very least, quasi-criminal in nature and juveniles are entitled to have a hearing on the voluntariness of an inculpatory statement. (Matter of Gregory W., 19 NY2d 55.) At such a hearing the court must find voluntariness beyond a reasonable doubt. (People v Huntley, supra; People v Pobliner, 32 NY2d 356.) "The burden of proof as to voluntariness is on the People.” (People v Huntley, supra, p 78.)
At the Huntley hearing the prosecution called one witness, a criminal investigator for the Village of North Syracuse Police Department. He testified that sometime on October 20, 1973, he was directed to go to the State of Virginia to pick up two boys, one of whom was the respondent, who were being held as runaways by the Shenandoah County Sheriff’s Department. In the company of two other Village of North Syracuse police officers, he traveled to Virginia, arriving at approximately 6 p.m. At approximately 7 p.m. the officers picked up the respondent and his companion, and took them to be fed. Then, at approximately 9:30 p.m. the respondent, the other juvenile and the three police officers began their trip from Virginia to New York. At approximately 4:30 a.m. on October 21, 1978, they arrived in North Syracuse. The officer testified *490 that no interrogation of the boy occurred during the trip, nor was the boy under arrest during the trip; he was merely in custody as a runaway being returned to his parents. (Family Ct Act, § 718.)
When they arrived in North Syracuse, the respondent’s parents were both present at the police station. Rather than releasing the respondent to the custody of his parents, however, the police advised the parents that they wanted to question the respondent concerning some burglaries that were under investigation in the Village of North Syracuse. The police did not indicate that they had probable cause for the arrest of the respondent. Nor had a warrant been issued for his arrest.
The parents, however, consented to the interrogation. Indeed, the respondent’s father specifically told the boy to cooperate with the police and to answer their questions.
The police officer then advised the respondent that he had a right to remain silent; that any statement that he made could and would be used aginst him in a court of law; that he had the right to counsel; and that if he was unable to provide counsel for himself, counsel would be provided for him. (Miranda v Arizona, 384 US 436.) No evidence was offered as to the respondent’s response when he was advised of these rights.
An interrogation was then conducted in the early morning hours at the police station. The statement adduced from the questioning was read and signed by the respondent and his parents. This statement was the statement that was proffered as a voluntary confession by the prosecution.
II. THE LAW
A. Section 249-a of the Family Court Act
In 1978 the Legislature adopted section 249-a of the Family Court Act, which states that "[a] minor who is a subject of a juvenile delinquency or person in need of supervision proceeding shall be _ presumed to lack the requisite knowledge and maturity to waive the appointment of a law guardian.” The immediate question that this court must resolve is when does a minor become "a subject” of a juvenile delinquency proceeding?
"A proceeding to adjudicate a person a juvenile delinquent is originated by the filing of a petition”. (Family Ct Act, § 731, subd 1.) When a minor becomes "a subject” of such a *491 proceeding, however, is not explicitly ennunciated anywhere in the statute. Nor has the Legislature stated that a minor is presumed to lack the knowledge and maturity to waive the appointment of a Law Guardian after a juvenile delinquency proceeding has commenced, or after a juvenile has been arraigned, or after a juvenile has been detained. What the Legislature has done is to create a mandatory statutory presumption that may only be overcome by clear and convincing evidence brought forth at a judicial hearing at which the Law Guardian appears and participates. The evidence must show that "the minor understands the nature of the charges, the possible dispositional alternatives and the possible defenses to the charges * * * possesses the maturity, knowledge and intelligence necessary to conduct his own defense, and * * * waiver is in the best interest of the minor.” (Family Ct Act, § 249-a.)
The Legislature has also declared that "minors who are the subject of family court proceedings should be represented by counsel of their own choosing or by law guardians.” (Family Ct Act, § 241.) Moreover, the Legislature in making this policy declaration stated that it "is based on a finding that counsel is often indispensable to a practical realization of due process of law and may be helpful in making reasoned determinations of fact and proper orders of disposition.” (Family Ct Act, § 241.)
It would appear that the Legislature intended that the right to counsel be automatic and that the right to counsel cannot be waived absent the presence of counsel and by a judicial determination.
A review of United States Supreme Court and New York Court of Appeals decisions further buttresses this interpretation of the new statute.[1] A review of leading cases reveals a concern for due process rights during custodial interrogations.
As early as 1963 the United States Supreme Court held that when the emphasis of an investigation shifts so that "its focus is on the accused and its purpose is to elicit a confession —our adversary system begins to operate, and * * * the accused must be permitted to consult with his lawyer.” (Escobedo v Illinois, 378 US 478, 492.) Then, in the landmark decision of Miranda v Arizona (384 US 436, supra), the court made it clear that when a person is being questioned in a *492 custodial setting, that person has a right to counsel in order to protect that individual’s Fifth Amendment right against self incrimination and that waiver of the Sixth Amendment right to counsel must be knowingly and intelligently made.
The Fifth Amendment protection from self incrimination extends to the States through the Fourteenth Amendment. (Malloy v Hogan, 378 US 1.) It also is a right expressly made applicable to juveniles by the United States Supreme Court decision of Matter of Gault (387 US 1).
In New York, the rule has long been that "[o]nce an attorney enters the proceeding, the police may not question the defendant in the absence of counsel, unless there is an affirmative waiver, in the presence of the attorney, of the defendant’s right to counsel”. (People v Arthur, 22 NY2d 325, 329.) While the fact that a person is represented by counsel in a proceeding unrelated to the charges under investigation is not sufficient to trigger the Arthur rule (People v Hetherington, 27 NY2d 242; People v Taylor, 27 NY2d 327; People v Ramos, 40 NY2d 610; People v Ermo, 61 AD2d 177), and while the Arthur rule does not apply to a noncustodial interrogation (People v McKie, 25 NY2d 19), the Court of Appeals has repeatedly reiterated the importance of the rule in New York practice. (See, e.g., People v Hobson, 39 NY2d 479; People v Buxton, 44 NY2d 33.) In Hobson, Chief Judge Breitel emphasized that the Arthur rule is no "mere 'dogmatic claim’ or 'theoretical statement’ ” but is "a rule grounded in this State’s constitutional and statutory guarantees of the privilege against self incrimination, the right to the assistance of counsel, and due process of law”. (People v Hobson, supra, p 483.)
A minor undergoing a custodial interrogation is "a subject” of a juvenile delinquency proceeding. The right to counsel and the privilege against self incrimination, therefore, attach.
Having determined that the subject of a custodial interrogation is "a subject” of a juvenile delinquency proceeding for purposes of section 249-a of the Family Court Act, the presumption that he lacks the requisite knowledge and maturity to waive the appointment of a Law Guardian cannot be addressed until the Law Guardian is appointed. In the instant case, since no Law Guardian had been appointed, this court cannot look to the issue of whether the respondent had the requisite knowledge and maturity to waive the right to counsel. Moreover, in the case at bar even had counsel been *493 present at the interrogation, we find that no knowing and intelligent waiver could have occurred.
B. The Fifth and Sixth Amendment Rights
The waiver of a right or privilege must be knowingly and intelligently made. (Johnson v Zerbst, 304 US 458.) "The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.” (Johnson v Zerbst, supra, p 464.)
Youthfulness and inexperience with the juvenile/criminal system of justice have long been considered factors to be considered in determining if a waiver is knowingly and intelligently made. (See, e.g., Haley v Ohio, 332 US 596; United States v Morales, 233 F Supp 160; Ann., 71 ALR2d 1160.) In Haley (supra), Mr. Justice Douglas writing for the court stated that a 15-year-old boy "cannot be judged by the more exacting standards of maturity. That which would leave a man cold and unimpressed can overawe and overwhelm a lad in his early teens.” (Haley v Ohio, supra, p 599.)
The problems of juvenile waiver have concerned courts in other States. In Louisiana, for instance, the Supreme Court recently held that a minor must consult with an attorney, an informed parent, guardian, or other adult interested in the minor’s welfare before the minor may be allowed to waive the right to counsel. (Matter of Dino, 359 So2d 586 [La].) In Vermont, the Supreme Court has held that "a minor does not have the legal capacity to waive for himself the appointment of a guardian ad litem.” (Matter of Dobson, 125 Vt 165, 169.) In Pennsylvania, the Supreme Court recently held that a statement should have been suppressed because a 17 year old was not afforded an opportunity to consult with an attorney, parent or other interested and informed adult prior to waiving his right to counsel and privilege against self incrimination. (Commonwealth v Jamison, 474 Pa 541.)
In New York, the law has been that the minor must waive his rights himself and that the "failure of the police to seek the additional consent of an adult will not outweigh, in any given instance, an evidentially supported finding that such a waiver was actually made.” (People v Stephen J. B., 23 NY2d 611, 617; see, also, Matter of Hector G., 89 Misc 2d 1081.)
Nor may waiver be presumed from a silent record. (Carnley v Cochran, 369 US 506, 516.) "[A] valid waiver will *494 not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained.” (Miranda v Arizona, 384 US 436, 475, supra.) Assuming, arguendo, that the boy in the instant case is capable of waiving his right to counsel during a custodial interrogation,[2] the fact that he did not affirmatively state that he had no desire for counsel abrogates whatever "waiver” occurred.
The capacity, then, of the minor to knowingly and intelligently waive the right to counsel is the critical factor to be considered. Since the Legislature has found that a minor is presumptively unable to waive the right to the appointment of a Law Guardian absent a judicial hearing in which the Law Guardian participates (Family Ct Act, § 249-a), surely the minor does not have the capacity to knowingly and intelligently waive the right to counsel in the station house where he fails to benefit from either the assistance of counsel or the protection afforded by a recorded judicial proceeding, regardless of the dutifulness of the police in reading to him his Miranda rights or the anxiousness of his parents to co-operate with the police. (See People v Dunbar, 62 AD2d 1132.)
C. The Fourth Amendment Rights
The instant case involves a detention for investigation. There was no probable cause to arrest the subject boy when he was returned to the North Syracuse Police Station in the early morning hours of October 21, 1978. Nor was there an arrest warrant outstanding. The boy was in custody pursuant to a report that he was a runaway when he was further detained in the police station, although his parents were waiting at the police station when he arrived, after riding throughout the night, from Virginia.
As the United States Supreme Court taught us in Davis v Mississippi (394 US 721, 726-727), "Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed 'arrests’ or 'investigatory detentions’.” When there is the possibility of an illegal arrest, where the arrest was investigatory, even when Miranda warnings are given, if an inculpatory statement is made and is found to be voluntary under the Fifth Amendment, "[i]n order *495 for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, Wong Sun[3] requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be 'sufficiently an act of free will to purge the primary taint.’ 371 U.S., at 486.” (Brown v Illinois, 422 US 590, 602.) Here, there is no evidence of the boy’s free will consent to interrogation. His parents agreed to the questioning. There was no act of free will at all upon his part.
The motion to suppress the confession is granted.
Submit order accordingly.

. Statutes intended for the protection of the rights of infants are to be liberally construed. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 323.)

. The United States Supreme Court has recently stated that custodial interrogation implies questioning in a setting where the defendant is restricted and from which he is not free to depart. (Oregon v Mathiason, 429 US 492.)

. (Wong Sun v United States, 371 US 471.)