OPINION OF THE COURT
Dan Lamont, J.
The petition alleges that respondent is a juvenile delinquent, by reason of his alleged criminal possession of a controlled substance in the seventh degree, as defined by section 220.03 of the Penal Law, a class A misdemeanor. The charge is that respondent on October 5,1980, at about 3:40 p.m., knowingly and unlawfully had in his possession a controlled substance consisting of an orange and yellow gelatin capsule containing the controlled substance Flurazepam, a depressant.
Respondent, claiming to be aggrieved by an unlawful search and seizure, has made a motion to suppress the gelatin capsule seized from his person on October 5, 1980, by Officer Buniak. .
The petitioner has the burden of going forward to show the legality of the police conduct in the first instance. However, the respondent bears the ultimate burden of proving that the evidence should be suppressed.
*717 A suppression hearing was conducted before me on October 23, 1981. Officer Buniak and Deputy Chief Stiffler were called by the petitioner. Their testimony was marked by no serious inconsistencies or contradictions, and had the force and flavor of credibility. I give credence to their testimony. Respondent testified in his own behalf. Based upon respondent’s age and demeanor, his interest in the outcome of this matter, and my finding that he was intoxicated (if not stoned) at the time of the events in question, I find respondent’s testimony too conflicting, too weak, and too incredible, under the circumstances, to accept.
FINDINGS OF FACT
Based upon the testimony adduced at the fact-finding hearing, and the exhibits received in evidence, I make the following findings of fact:
On October 5, 1980, at 3:40 p.m., in the vicinity of the Sunset Drive-In Theatre entrance on New York State Route 9, Greenport Town Police Officer Buniak stopped a southbound vehicle for speeding. The Livingston-Green-port town line is marked by signs across from the drive-in entrance. While issuing the speeding summons, Officer Buniak observed respondent about 150 feet away on the other side of Route 9, with his thumb out. The respondent was stumbling around on the northbound pavement, and his footsteps appeared swaying and uncertain. The weather was clear and sunny, and traffic on Route 9 was heavy. The respondent was carrying a paper bag and appeared to be hitchhiking.
Respondent then turned around and walked back southerly on Route 9 to a point near the entrance to the trailer park. When Officer Buniak first observed respondent hitchhiking and staggering, respondent was within 100 yards of the Greenport town line. When Officer Buniak finished issuing a summons for speeding to the driver of the automobile, he then proceeded southbound in his vehicle, proceeding past respondent, and turned his vehicle around. Officer Buniak stopped his vehicle near the trailer court entrance, and observed respondent standing and swaying around. Officer Buniak then approached respondent in his vehicle, and upon exiting his vehicle, he observed that respondent appeared intoxicated and youthful.
*718 Officer Buniak asked respondent what his problem was, and respondent’s answer was incoherent. Officer Buniak told respondent that he was detaining him for hitchhiking and because of his intoxicated condition.
Respondent was thereupon taken into custody and detained. Respondent was unable to give any coherent response to the officer’s questions, except to state that his age was 15. Before placing respondent in.the patrol car, Officer Buniak subjected respondent to a “pat down” search, whereupon Officer Buniak felt a hard item (2 inches by 4 inches) which was a hard cigarette pack. The cigarette pack, when removed from respondent’s pocket, revealed an orange and yellow gelatin capsule between the cellophane and the pack, which capsule is the subject of this suppression hearing. A plastic bag in respondent’s pants pocket contained a vegetable substance which appeared to be marihuana and some marihuana cigarettes, and the paper bag which respondent carried contained a cold six-pack of Genesee Cream Ale and two pipes.
Officer Buniak told respondent that he was being taken into detention because of the hitchhiking violation, his condition, and for possession of a controlled substance. Respondent was taken into detention by Officer Buniak in the Town of Livingston, about three tenths of a mile south of the Greenport town line.
During the trip to the Greenport Town Police Station, respondent remained incoherent. Officer Buniak received a call to respond to Barker’s for a suspected shoplifting; therefore, he made arrangements upon his arrival at the Greenport Town Police Station to turn respondent over to Deputy Chief Edward Stiffler. At the police station, respondent remained somewhat incoherent, moody, uncooperative, and disruptive. His hair was mussed, his clothes disarranged, and he appeared intoxicated. After obtaining information from respondent to complete the detention report, Deputy Chief Stiffler called respondent’s uncle, Edward De Crosta, and respondent was released into his uncle’s custody at about 4:45 p.m. The officers were unable to notify respondent’s parents, who were out of town. Respondent was detained for a total of approximately one hour.
*719 CONCLUSIONS OF LAW
When Officer Buniak first observed respondent diagonally across Route 9 from the Sunset Drive-In, he had reasonable cause to believe that respondent was committing the offense of hitchhiking within the geographical jurisdiction of thq Town of Greenport. (See CPL 20.50, 140.10, subd 2, par [a].) Furthermore, Officer Buniak had reasonable cause to believe that respondent was a youth under 16 years of age, whose apparently intoxicated condition could prove harmful to himself or others.
Pursuant to CPL 140.10 (subd 2, par [b]), the arrest of respondent three tenths of a mile south of the Greenport town line was legal and proper. But for respondent’s young age, his intoxicated condition, and his prior conduct which posed a danger to himself and motorists using Route 9, Officer Buniak, pursuant to CPL 150.10 and 150.20, could have simply issued respondent an appearance ticket.
However, since respondent was so intoxicated as to be incoherent, and since Officer Buniak had ascertained that respondent was 15 years of age and appeared 15 years of age and could be a runaway (see Family Ct Act, § 718, subd [a]), it then became incumbent upon Officer Buniak to detain respondent for his own safety until respondent’s parents or other relatives could be notified. Officer Buniak’s detention of respondent under all of the facts and circumstances herein was eminently proper.
Subdivision (a) of section 718 of the Family Court Act provides, in part, as follows: “A peace officer, *** or a police officer may return to his parent or other person legally responsible for his care any male under the age of sixteen *** who, in the reasonable opinion of the officer, appears to have run away from home without just cause. For purposes of this action, a police officer or peace officer may reasonably conclude that a child has run away from home when the child refuses to give his name or the name and address of his parent or other person legally responsible for his care”.
The practice commentaries by Douglas J. Besharov following section 718 of the Family Court Act contain the following paragraph: “In the area of juvenile ungovernability, there is, as yet, a paucity of authority concerning *720 valid arrests. Clearly, though, there are additional grounds for taking into custody or arresting juveniles beyond the grounds for arresting adults, for example, if the child is a runaway, or is endangered by his surroundings. Such provisions seem compatible with a trend of United States Supreme Court reasoning. A runaway child needs temporary involuntary custody until a parent can be notified; awaiting issuance of a summons would be often futile if the child is truly a runaway. Surely presence in a dangerous neighborhood or at an unusual time of night, or seriously unkempt, undernourished or dazed condition, would be circumstances justifying temporary custody of a youngster. [Midonick and Besharov, Children, Parents, and the Courts 30-31 (1972).]” (Besharov, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Part 1, Family Ct Act, § 718, p 587.)
Having determined under all the facts and circumstances in this case that Officer Buniak was justified in taking respondent into temporary custody, and that such temporary detention was lawful, the remaining issue is whether the search of respondent incident to his lawful detention for noncriminal conduct was justified and lawful. For the reasons which follow, this court holds that the valid, lawful detention of respondent is all that is necessary to constitutionally justify a full search of the person detained.
In 1973, the United States Supreme Court in the companion cases of United States v Robinson (414 US 218) and Gustafson v Florida (414 US 160), held that in the case of a lawful custodial arrest for a traffic infraction, a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a “reasonable” search under the Fourth Amendment.
In the Robinson case, defendant was arrested for driving without a license. Before proceeding to the station house, the officer patted down the defendant’s clothing, removed a cigarette package from the coat pocket, and then discovered capsules of heroin in the cigarette pack. Similarly, in Gustafson (supra), marihuana cigarettes were found in the defendant’s pocket subsequent to an arrest for failure to have his operator’s license in his possession after being *721 stopped for “weaving”. In neither case, did the arresting officer testify that he believed the object he felt to be a weapon. The New York Court of Appeals has applied the Robinson-Gustafson reasoning to nontraffic offenses (see People v Weintraub, 35 NY2d 351) and to misdemeanor traffic offenses (see People v Troiano, 35 NY2d 476), but suggesting in Troiano that a full-body search would not be lawful when an arrest was not necessary because the alternative of a traffic summons was available.
Here, the police officer lawfully placed the intoxicated 15-year-old respondent in custody for his own protection, and then made a search of his person pursuant to police department procedures for full-custody arrests. A protective search pursuant to a full-custody arrest is not limited by the conditions set down in Terry v Ohio (392 US 1), for a search based upon less than probable cause to arrest.
The extended exposure of an officer to the danger which flows from the taking of a suspect into custody and transporting him to a police station can easily be contrasted to the relatively fleeting contact resulting from the typical Terry-type stop. (United States v Robinson, supra, at p 234, n 5.) The danger to the police officer flows from the fact of the arrest, and its attendant proximity, stress and uncertainty, and not from the grounds for the arrest. Placing any person in custody is a gross intrusion upon privacy. A respondent lawfully and properly placed in custody has lost whatever interest in privacy he had before the arrest. Accordingly, a full inventory search of the respondent’s person is proper for the respondent’s protection, as well as for the safety of his custodians. (See People v Troiano, supra, at p 478, citing People v Perel, 34 NY2d 462.)
Accordingly, respondent’s motion to suppress the gelatin capsule seized by Officer Buniak is denied. That respondent was properly and lawfully taken into custody for his own protection pursuant to subdivision (a) of section 718 of the Family Court Act completely justified the full inventory search of his person.