OPINION OF THE COURT
Sara P. Schechter, J.
Once again we find ourselves upon that front, never quieted, where the constitutional protection against unreasonable searches contends with another compelling concern, the protection of the police from unnecessary danger in the performance of their duties.
Respondent, charged with acts which, if committed by a person over the age of 16, would constitute criminal possession of a weapon in the second degree and unlawful possession of a weapon by a person under 16, moved to suppress physical evidence, a gun and two rounds of ammunition. Following a Mapp hearing, the motion was granted for the reasons stated herein.
FINDINGS OF FACT
Respondent, who is 15 years old, was standing on the mezzanine level of the 42nd Street and Eighth Avenue subway adjoining the Port Authority building at 12:30 *796 p.m., on a school day, when he was approached by two New York City transit policemen affiliated with the Truancy Squad. The function of the Truancy Squad is to identify truants and runaways and to return these youngsters to school or to their parents.
The officer asked respondent his name and age, which he gave. The officer then asked why respondent was not in school; respondent replied that he had just gotten off a bus from South Carolina. The officer asked where respondent was staying in New York, to which respondent answered, “Nowhere.”
The two officers then escorted respondent to a police room in the Port Authority, some 150 feet from where he had been standing. Inside the room one of the officers patted down respondent and readily found a .22 caliber revolver in the waistband of his pants. Youngsters are normally detained in the detention area while waiting to be transported to a school on West 48th Street. The purpose of the pat down is to find weapons which might injure the officers or the other youngsters in the room.
THE SEIZURE
The presentment agency concedes that respondent was not detained as a result of criminal conduct and that the stop and frisk statute, CPL 140.50 and section 305.2 of the Family Court Act, “Custody by a peace officer or a police officer without a warrant,” are inapplicable.
Authority for respondent’s detention is claimed from three statutes: section 718 of the Family Court Act, “Return of run away”; article IV of the Interstate Compact on Juveniles, “Return of Runaways” (L 1955, ch 155, § 1), and section 3213 (subd 2, par a) of the Education Law, “Arrest of truants.” Respondent does not challenge the facial validity of these statutes and concedes that the circumstances gave the police a common-law right of inquiry with respect to him, but he contends that his behavior gave no cause for his detention or search.
We find authorization for respondent’s detention in section 718 of the Family Court Act, but not in the Interstate Compact on Juveniles or the Education Law. Article IV of the Interstate Compact on Juveniles states, “Upon reason *797 able information that a person is a juvenile who has run away from another state party to this compact without the consent of a parent, guardian, person or agency entitled to his legal custody, such juvenile may be taken into custody without a requisition and brought forthwith before a judge of the appropriate court” (emphasis added). No evidence was presented that the police at any time had such “reasonable information,” which is clearly something more concrete than “reasonable suspicion” which can arise from refusal to impart information. In addition, the stated intention of the police to transport respondent to a school on West 48th Street is at variance with the compact’s direction that such youngsters be produced in court “forthwith”.
Respondent’s assertion of South Carolina residence should have been pursued through further inquiry, however, before the police leapt to the conclusion that he was a truant. If respondent were a resident of South Carolina, a fact borne out, incidentally, in the subsequent court proceedings, he would be eligible for New York City school enrollment only by special permission of the Board of Education. (Education Law, § 3202, subd 2.) Since respondent was in a subway station adjoining a bus station where buses from South Carolina do arrive, it was unreasonable to dismiss respondent’s claim out-of-hand.
Respondent’s conduct, however, does fall squarely within subdivision (a) of section 718 of the Family Court Act. This section authorizes a police officer to return to his parent a child under the age of 16 “who has run away from home without just cause * * * For purposes of this [section] a police officer * * * may reasonably conclude that a child has run away from home when the child refuses to give his name or the name and address of his parent or other person legally responsible for his care or when the officer has reason to doubt that the name or address given are the actual name and address of the parent or other person legally responsible for the child’s care.” Thus, respondent’s inability or unwillingness to give a local address clearly satisfied this statutory criterion.
Although the statute speaks of returning the child to his parent, a certain degree of detention of the child is inherent in this process. A reasonable period of time must be *798 allowed for attempts to identify, locate and contact the parent and for the transportation involved in the actual return. It is not disputed that this detention, notwithstanding its primarily child-protective function, is a “seizure” within the purview of the Fourth and Fourteenth Amendments to the Federal Constitution. Since the facial constitutionality of the statute is not disputed, however, we need only state that we find the scope of respondent’s detention here to have been reasonably related to the purposes of the statute.
THE SEARCH
Although we have concluded that respondent was lawfully detained, it does not follow that this detention for noncriminal conduct was a “lawful arrest” which would justify the search of respondent. “An arrest is the initial stage of a criminal prosecution. It is intended to vindicate society’s interest in having its laws obeyed, and it is inevitably accompanied by [further] interference with the individual’s freedom of movement, whether or not trial or conviction ultimately follows.” (Terry v Ohio, 392 US 1, 26.)
Not only would it have been impossible for the detention of respondent pursuant to section 718 of the Family Court Act to have culminated in a juvenile delinquency proceeding, absent the discovery of the gun, but it is doubtful that it could even have led to a viable PINS petition, since that would have required proof that respondent’s truancy or running away were habitual rather than an isolated instance.[1] The only certain consequence of police action pursuant to section 718 is the return of the youngster to the lawful custodian, which is the normal condition of an unemancipated minor. Thus, the reasoning which justifies search of the person incident to lawful criminal arrest on the theory that the arrest itself is “the grossest intrusion”[2] is inapplicable here.[3]
*799 Also unsatisfactory is the analogy of this case to a police “stop” upon reasonable suspicion of criminal activity. If this were a “stop”, the decision to suppress would be automatic, since the officer had neither any basis to suspect that criminal activity might be afoot nor to conclude that respondent might be armed and dangerous. (Terry v Ohio, supra.)
Here, respondent was not frisked while the preliminary inquiries were being made, but only when the decision had been made to detain him. Thus, the contact between the police and respondent would be both more protracted.and, presumably, more stressful than that arising from a mere stop.* **[4] The question is squarely presented, therefore, whether the concern of the police for their own protection and that of other youngsters in the detention area justifies the limited intrusion of a pat-down search of respondent.[5]
A substantial line of cases has stressed the fact of the custodial situation rather than the grounds for it as justification for a search of the person. “It is scarcely open to doubt that the danger to an officer is far greater in the case of the extended exposure which follows the taking of a suspect into custody and transporting him to the police station than in the case of the relatively fleeting contact resulting from the typical Terry-type stop. This is an adequate basis for treating all custodial arrests alike for purposes of search justification.” (United States v Robinson, 414 US 218, 234-235.)
At least one lower court has relied on this authority to justify a full inventory search of a juvenile who was taken into custody after a police officer observed him hitchhiking in an intoxicated condition. (Matter of De Crosta, 111 Misc 2d 716.)
*800 However, another body of judicial thought, of late more often expressed in concurring and dissenting opinions, concerns itself with the problem of the pretext arrest. This' issue, which runs as a troubling undercurrent throughout the Robinson and Gustafson v Florida (414 US 260) line of decisions, cannot be sidestepped in the instant case, and ultimately, in spite of Robinson’s broad language, we can maintain our judicial footing only by considering the nature of the conduct which led to the custodial situation.
Upholding a search incident to a misdemeanor traffic violation in People v Troiano (35 NY2d 476), for example, Judge Rabin, concurring, wrote “Although the nature of the offense itself does not raise the likelihood of violence, the fact that it is in the misdemeanor category separates and distinguishes it from a very great number of traffic infractions committed by virtually everyone who ventures outdoors.” (Supra, at p 480.) The criteria for police intervention pursuant to section 718 of the Family Court Act, on the other hand, are both broad and subjective.[6] While these criteria may be reasonably related to the purposes of the statute, they provide virtually no reviewable basis to discern the sham or pretext arrest.[7] The enormous potential for abuse in such a situation compels the application of the exclusionary rule.
The court is all too aware that the youngsters detained pursuant to section 718 of the Family Court Act will generally not be a Sunday-school-picnic crowd. That some of these youngsters will be armed and dangerous is not disputed. However, mere statistical possibility, even probability, of criminality, cannot justify police encroachment upon the sanctity of the individual in a free society. Here, there was absolutely nothing about respondent to indicate that he might be armed and presently dangerous. Rather, *801 the search was a routine procedure conducted on all detained youngsters. If circumstances had existed from which to draw “specific reasonable inferences,”[8] that respondent posed a threat to the safety of the officers or others, this court’s decision might well have been different, notwithstanding the noncriminal nature of the detention. Under the present facts, however, the motion to suppress must be granted.

. (Matter of Raymond O., 31 NY2d 730; Matter of Richard K., 35 AD2d 716.) This would be equally true if respondent had been “arrested” pursuant to section 3213 (subd 2, par a) of the Education Law.

. (People v Troiano, 35 NY2d 476, 478; United States v Robinson, 414 US 218, 235; Gustafson v Florida, 414 US 260; People v Weintraub, 35 NY2d 351, 354.)

. The distinction between section 718 of the Family Court Act detention and a lawful arrest is highlighted in Matter of Schaefer (97 Misc 2d 487), where a juvenile’s confession was suppressed on the grounds, inter alia, that his Fourth Amendment rights *799 were violated by his arrest without probable cause, even though the “arrest” was actually a continuation of detention originated pursuant to section 718 of the Family Court Act.

. The concepts of “arrest” and “stop” are ultimately unhelpful as applied to a noncriminal detention and should simply be set aside, as at least one commentator has suggested in the related area of administrative searches. (Buss, The Fourth Amendment and Searches of Students in Public Schools, 59 Iowa L Rev 739, 790.)

. The court rejects respondent’s contention that by delaying the search until respondent was inside the detention room the police have conceded that respondent posed no threat. Rather, this procedure shows an appropriate sensitivity in sparing the youngster public humiliation.

. By comparison, the criteria of section 9.41 of the Mental Hygiene Law, authorizing the police to take into custody certain persons who appear to be mentally ill, are considerably more specific.

. The concern to avoid pretext arrest of juveniles has been expressed in other contexts: Matter of Robert M. (99 Misc 2d 462 [gun suppressed where police failed to arrest for unrelated crime]); Matter of Clive W. (109 Misc 2d 788 [arrest for violation, which could not serve as basis of juvenile delinquency proceeding, may not serve as predicate for charge of resisting arrest]); Matter of Sylvia H. (78 AD2d 875) and Matter of Freeman (103 Misc 2d 649 [an adjudicated person in need of supervision cannot be charged with juvenile delinquency based on crime of escape from a nonsecure facility]).

. Terry v Ohio, supra, at p 27.