OPINION OF THE COURT
Michael Gage, J.
The issue presented at this Mapp hearing is whether a *223 police officer has probable cause to arrest a youth based on a person’s statement that the youth is her child and that a PINS warrant exists.
FINDINGS OF FACT
On July 18, 1988 at approximately 12:30 p.m. Police Officer Nancy Rosado and her partner were in uniform in a radio patrol car at 132nd Street and Eighth Avenue when a woman waved to them. The woman spoke Spanish as did Officer Rosado. The woman said she had a PINS warrant for her daughter Doris who had not been home in awhile. She said her daughter was across the street. The officers later learned the identity of the woman.
Officer Rosado saw a young woman across the street by a hot dog stand holding a hot dog. She called out, "Doris”. The girl walked in her direction. When the girl got to the police car, Officer Rosado said there was a PINS warrant and she would have to take her to the precinct. She asked her to get in the car and the girl asked to speak to a male standing a short distance away. Officer Rosado refused, testifying that she was not going to let the girl go anywhere. The girl asked two more times to be allowed to talk to the man, but permission was denied. The girl did not resist efforts to get her into the patrol car, but put her hand on her stomach. Based on Officer Rosado’s testimony, the girl was in custody and not permitted to leave prior to putting her hand on her waist. Officer Rosado told her to put her hand down and she complied. Doris was cooperative and there was nothing to indicate criminal activity. Officer Rosado placed her hand on the girl’s waist and felt a stiff object. She did not know what it was. She lifted the girl’s shirt and removed a package which contained numerous vials of alleged crack.
CONCLUSIONS OF LAW
The arrest of Doris was without probable cause and unlawful. The police officers lacked probable cause to arrest respondent because they had no suspicion of criminal activity and there was an inadequate foundation to base the arrest on the statement of a stranger that a warrant existed. It was the clear and candid testimony of Officer Rosado which the court credits that at the time she took Doris into custody she had no reason to believe that Doris was involved in anything illegal. Therefore the lawfulness of the arrest must depend upon *224 whether the police acted reasonably in depriving respondent of her liberty based on the claim of a warrant.
A warrant represents a Magistrate’s decision that there are lawful grounds to arrest the person named. Unless the police officer personally observes criminal conduct, a warrant is essential under CPL 120.20 to make a valid arrest.
Absent the circumstances described in Family Court Act § 718, the same constitutional standards for arrests that protect adults also protect juveniles. (See, Matter of Irving S., 36 AD2d 642.) Therefore, police must have more than an anonymous person’s assertion that a warrant exists to rely on such warrant.
As the practice has evolved in Family Court, if a parent is the petitioner in a PINS case and the parent, upon swearing to the truth of the allegations of the petition, further swears before a Judge that the child refuses to come to court or that the child has left home and refuses to return, the court may issue a warrant and give a copy to the petitioner. The court may also determine that based on the particular facts, a summons is the appropriate process. (Family Ct Act § 725.) Indeed, the Practice Commentary advises that "in keeping with the overall philosophy of the Family Court Act * * * [it is] the hope of the drafters that: 'Absent special circumstances, a warrant should not be issued unless a summons has first been issued and disregarded.’ [Committee Comments to Fam. Ct. Act § 725 (1963).]” (Besharov, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, at 50.) The practice has further evolved that in keeping with the nature of the behavior charged against the juvenile, certain restrictions may be placed on the warrant. The warrant may be valid during "court hours only”, may prohibit the use of handcuffs and may be limited to a relatively short time period of from 30 to 60 days. This last restriction is to avoid the practice of a parent keeping a warrant for an extended time for execution when, in the parent’s view, the child misbehaves. The possibility that a court PINS warrant contains restrictions makes production of the warrant or, at the very least, police inquiry about the warrant essential.
Here, the officer did not ask a single question either of the woman who flagged down the police or of the young woman detained. The woman was not asked her name, her address, what court issued the warrant, when it was obtained or where it was. The respondent was not asked her name, address, or if *225 the woman was her mother. The girl simply walked, hot dog in hand, toward the officer and was arrested. It was only at some later time, that the identity of the woman was learned.
On these facts, the woman was the equivalent of an unidentified citizen complainant. Information provided by such strangers does not justify a forceable search and seizure. (Matter of Elvin M., 151 AD2d 674.) Here there were no articulated indicators of reliability of the information which could have given rise to reasonable suspicion justifying even a protective "patdown”. At the very least, the police had a duty to inquire regarding the actual existence of a warrant and about the identities of the parties prior to making an arrest. Without such inquiry the entire statutory scheme requiring the judicial issuance of a warrant in the absence of probable cause is rendered meaningless. Since such timely inquiry was not made, the court may not speculate about whether responses to appropriate questions would have rendered the woman’s information presumptively reliable so as to provide the basis for further police action. (People v La Pene, 40 NY2d 210.)
In arguing for the validity of the police conduct, the presentment agency attempts to rely on Matter of Terrence G. (109 AD2d 440) which interprets Family Court Act § 718, the so-called runaway statute. This reliance is misplaced. Section 718 (a) authorizes an officer to arrest a juvenile "who, in the reasonable opinion of the officer, appears to have run away from home without just cause.” The statute contains an upper age limitation* on the youth to be arrested and contains a presumption, namely: "For purposes of this action, a police officer or peace officer may reasonably conclude that a child has run away from home when the child refuses to give his name or the name and address of his parent or other person legally responsible for his care or when the officer has reason to doubt that the name or address given are the actual name and address of the parent or other person legally responsible for the child’s care.”
Thus, even this "protective and rehabilitative” statute requires some inquiry by a police officer prior to detaining a juvenile. (Matter of Terrence G., supra, at 442.) The officer must ask for the name, address and age of the youth and, based on the information given, be able to form a "reasonable *226 opinion” that the child is a runaway. Reasonable opinion is synonymous with probable cause to believe that the child is a runaway. (Matter of Terrence G., supra, at 444.) Here, as previously found, no questions were asked of respondent. Therefore, the officer had no articulable basis for detaining her even for the purpose of a "patdown” search. The woman’s comment that her daughter had not been home in awhile does not by itself rise to the level of reasonable suspicion that the child has run away from home without just cause. Neither, since this incident occurred in July, could the police have had grounds to detain respondent as a suspected truant. (See, Matter of Shannon B., 70 NY2d 458.)
Finally, nothing in the factual circumstances of Doris’ situation, i.e., she was not observed to be " 'seriously unkempt, undernourished or [in a] dazed condition’ ” justified her detention. (Matter of De Crosta, 111 Misc 2d 716, 720 [Fam Ct, Columbia County 1981].)
Since respondent’s arrest cannot be supported by the mere assertion of a warrant, was not based on probable cause and was unauthorized by the runaway statute, the vials of alleged crack seized from her following the improper arrest are suppressed. In light of the suppression of this evidence, the juvenile delinquency petition is dismissed.

 The statute specifies "any male under the age of sixteen or female under the age of eighteen”. However, this gender-related age differential has been held unconstitutional (Matter of Patricia A., 31 NY2d 83 [1972]).